UNITED STATES, Appellant,

v.

Sergeant First Class David J. MARTINEZ, 585–24–7254, United States Army, Appellee.

ACMR MISC 9202472.

U.S. Army Court of Military Review.

4 Feb. 1993.

---

7. *Porter v. Eggers*, 32 M.J. 583 (A.C.M.R.1990).

For Appellant: Captain Gregory T. Baldwin, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major James L. Pohl, JAGC (on brief).

For Appellee: Captain Beth G. Pacella, JAGC (argued); Major Fran W. Walterhouse, JAGC (on brief).

## OPINION OF THE COURT

CREAN, Senior Judge:

This is an appeal by the United States, pursuant to Article 62, Uniform Code of Military Justice [hereinafter UCMJ], requesting that we reverse a ruling by the military judge suppressing a statement made by the appellee on 14 April 1992. We agree with the United States and hold that the military judge erred as a matter of law when he suppressed the appellee's statement.

The appellee was arraigned on charges of false official statement, forcible sodomy, and indecent assault, in violation of Articles 107, 125, and 134, UCMJ, 10 U.S.C. §§ 907, 925, and 934 (1982). The offenses allegedly took place in Saudi Arabia where the appellee's Army Reserve unit from Santa Fe, New Mexico, was deployed for Operation Desert Storm.

On 9 November 1992, the appellee, at an Article 39(a), UCMJ, session, moved to suppress his 14 April 1992 statement. After extensive testimony, the military judge, on 10 November 1992, suppressed the statement. On 12 November 1992, the trial counsel served notice on the military judge of the government's intent to appeal his suppression ruling. On 1 December 1992, the government filed its notice of appeal with this Court. On 13 January 1993, this Court ordered the military judge to make additional findings of fact. The military judge made those additional findings of fact on 20 January 1993, which are attached to this opinion as Appendix A. Oral argument was heard on 2 February 1993.

The facts surrounding the statement made by the appellee on 14 April 1992 are clearly outlined in the findings made by the military judge. Basically, the appellee was under investigation for the offenses listed above. At an interview with Criminal Investigation Command (CID) Special Agent (SA) Boles, at Kirtland Air Force Base, New Mexico, on 24 March 1992, the appellee agreed to undergo a polygraph examination. The examination, to be conducted by SA McFarland, was scheduled for 14 April 1992, at a hotel in Albuquerque, New Mexico.

The appellee arrived for the polygraph examination accompanied by Major (MAJ) Brault, a friend of the appellee's who was not a lawyer. Special Agent Boles in-

formed the appellee and MAJ Brault that MAJ Brault could not attend the polygraph session but that he could wait in the lobby. Special Agent Boles and the appellee went to the hotel room and met SA McFarland. The initial pretest phase of the polygraph examination commenced at 0905 hours and continued until 1055 hours. During this initial session, a proper rights warning was given and the appellee waived his rights. There was a five-minute break and the next phase went until 1155 hours. There was another break of 20 minutes and the next phase started at 1215 hours. The actual polygraph testing phase started at 1240 hours and lasted until 1320 hours. Special Agent McFarland informed the appellee that deception was indicated. The post-test phase of the examination immediately commenced and lasted until 1645 hours.

During the post-test phase, SA McFarland threatened to leave unless the appellee told the truth. The appellee then made an inculpatory statement. Special Agent McFarland then departed and SA Boles continued the interrogation to reduce the appellee's statement to writing. As they undertook this effort, the appellee sought to minimize his culpability at various points during the taking of the statement. Special Agent Boles challenged the appellee at each point where he departed from the substance of what he had earlier told both agents. In response to each challenge, the appellee returned to the version of the events he had earlier told SA Boles and SA McFarland. This process led to a typed statement which the appellee read, swore to, and subscribed at 1633 hours. The appellee departed the hotel room at 1645 hours.

The military judge determined that the 14 April 1992 statement was not the product of an essentially free and unconstrained choice. He based this on his factual findings that the appellee believed himself to be alone against the government; all of the appellee's efforts to obtain legal counsel once he returned to the United States from Saudi Arabia were fruitless; the appellee was denied the accompaniment of MAJ Brault for the polygraph examination; it appeared to the appellee that the media had chosen sides and was against him; the appellee was told by the CID agents that he had lied and they offered an alternate scenario as the truth; and, the appellee was not a member of an active duty army unit that could provide support and his reserve unit told him to train elsewhere. The military judge further determined that while the appellee could physically depart from the hotel room, he could not psychologically leave. The military judge found that with all of these matters weighing on him, the appellee cracked, gave up, and told the CID agents what they wanted to hear.

█ In ruling on an appeal by the United States under Article 62, UCMJ, 10 U.S.C. § 862, this Court is limited to acting only on matters of law. UCMJ art. 62(c). In a limited review on matters of law, this Court may not substitute its findings of fact for those of the trial judge, and we should only disturb them if those facts are unsupported by evidence in the record of trial or are clearly erroneous. *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *United States v. Burris*, 21 M.J. 140, 144 (C.M.A. 1985); *United States v. Middleton*, 10 M.J. 123, 133 (C.M.A.1981). Accordingly, we determine that the findings of fact of the military judge (Appendix A), except for findings 42 and 43 which we consider to be his conclusions as a matter of law, are supported by evidence in the record of trial and are not clearly erroneous. We also agree with the military judge, as outlined in his findings 36 and 37, that he applied the correct tests to determine if a statement is voluntary and the burden the government is required to meet for admissibility of the statement. We, therefore, proceed based on the findings of the military judge.

The determination of the voluntariness of a confession under the due process clause of the Fifth Amendment is a matter of law. *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991) (citing *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985)); *United States v. Poduszczak*, 20

M.J. 627, 631 (A.C.M.R.1985). Since a confession of the accused is the most probative and damaging evidence against him, *Bruton v. United States,* 391 U.S. 123, 139, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968), we must be careful in determining that it is voluntary and not coerced. In doing so, we give great deference to the ruling of the trial judge.

■■■ The Constitutional test for the voluntariness of an accused's confession is:

Is the confession the product of an essentially free and unconstrained choice of its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). Coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of due process and the Fifth Amendment. *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). The test to determine if the accused's will has been overborne involves an assessment of the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The coercion can be mental as well as physical. *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). The inquiry as to the voluntariness of a confession involves a three-step process:

First, there is the business of finding the crude historical facts, the external, "phenomenological" occurrences and events surrounding the confession. Second, because the concept of "voluntariness" is one which concerns a mental state, there is the imaginative recreation, largely inferential, of internal, "psychological" fact. Third, there is the application to this psychological fact of standards for judgment informed by the larger legal conception ordinarily characterized as rules of law but which, also, comprehend both induction from, and anticipation of, factual circumstances.

*Culombe v. Connecticut,* 367 U.S. at 603, 81 S.Ct. at 1879.

■■■ The military judge did not specifically state that he found coercive police activity[1] by SA Boles or SA McFarland. However, since this is a necessary predicate to consider the voluntariness of a confession, we will assume that the military judge did find coercive police activity. Even though there is coercive police activity, the confession may still be voluntary under the Fifth Amendment. *Colorado v. Connelly,* 479 U.S. at 164 n. 2, 107 S.Ct. at 520 n. 2 (citing *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)); *see United States v. Norfleet,* 36 M.J. 129 (C.M.A.1992).

The military judge went through the three-phased process. He determined the crude historical facts and we agree with him. He also determined the psychological facts and we, again, agree with him. However, it is in applying these facts to the correct rule of law that we disagree with the military judge. We find that the confession was voluntary. The appellee was given proper warnings and waived his rights. He was physically free to leave the room. While the sessions extended over several hours, what occurred during the sessions was not oppressive so as to overbear his will. Although the appellee may have felt he was alone against the world and everyone was against him, this psychological feeling was also not enough to critically impair his capacity for self-determination. Accordingly, we conclude as a matter of law that the statement of the appellee given to SA Boles on 14 April 1992 was the

---

1. For examples of improper coercive police activity, see *Colorado v. Connelly,* 479 U.S. at 163 n. 1, 107 S.Ct. at 520 n. 1. Our reading of the record of trial does not convince us that the police activities of SA Boles or SA McFarland were coercive. It is settled law that the use of a polygraph examination that results in obtaining a subsequent confession does not render that confession involuntary. *United States v. McDevitt,* 328 F.2d 282 (6th Cir.1964); *Tyler v. United States,* 193 F.2d 24 (D.C.Cir.1951), *cert. denied,* 343 U.S. 908, 72 S.Ct. 639, 96 L.Ed. 1326 (1952); *United States v. Bostic,* 35 C.M.R. 511 (A.B.R. 1964).

product of a free and unconstrained choice by the appellee and, thus, voluntary under the Fifth Amendment.

The appeal of the United States pursuant to Article 62 of the Uniform Code of Military Justice, 10 U.S.C. § 862 (Supp. I 1983) is granted. The ruling of the military judge suppressing the appellee's statement is vacated. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

Judge GONZALES and Judge DELL'ORTO concur.

APPENDIX A

DEPARTMENT OF THE ARMY

U.S. Army Trial Judiciary

Third Judicial Circuit

20 January 1993

United States v. Martinez

Additional Findings of Fact

On 9 and 10 November 1992, a hearing on various Motions to Suppress in this case was held at Fort Bliss, Texas. After hearing the evidence, listening to counsels' arguments, and reading their briefs and cited cases I announced my ruling and related Findings of Fact. (R 524–532) The trial counsel asked me to be more specific with respect to Motion to Suppress Number 5. (A.E. XIV) I declined because I wanted to see the written record before making such findings. The trial counsel never again asked for such findings and I believed she had abandoned her request. Accordingly, I made no additional findings. By Order dated 13 January 1993, the Army Court of Military Review directed that I prepare additional Findings of Fact. In response to that Order I find as follows:

1. The investigation into the accused's alleged misconduct began in Saudi Arabia on or about 24 January 1991.

2. The accused made various statements concerning his actions while he was in Saudi Arabia.

3. In Saudi Arabia he saw a lawyer, CPT Winn, on at least two occasions.

4. Apparently, no action was taken to end the matter prior to the accused's departure from Saudi Arabia.

5. On 10 December 1991, he was issued an administrative reprimand. (A.E. XXXI)

6. At that point he believed the investigation was completed and no further adverse action would befall him.

7. Subsequently, the accused was informed through the news media that the matter was not closed and that further action might occur.

8. Eventually the CID was directed to investigate the matter.

9. In the course of this investigation CID Agent Boles met with the accused at Kirtland AFB, New Mexico on 24 March 1992.

10. During the course of that meeting the accused agreed to undergo a polygraph examination.

11. Subsequently, the examination was scheduled for 14 April 1992 at a motel in Albuquerque, New Mexico. CID Agent McFarland was to be the examiner.

12. Prior to 0850 on 14 April 1992, the accused arrived at the motel with MAJ Brault.

13. Mr. Boles informed MAJ Brault that he could not attend the examination in the motel room but he was welcome to wait in the lobby.

14. The accused and Mr. Boles then went to the hotel suite and MAJ Brault returned to his duties.

15. In the suite, the accused was introduced to Mr. McFarland and the polygraph examination routine began.

16. The pre-test phase began at 0905 and continued until 1055. After a five minute break, the phase continued until 1155. The parties reconvened at 1215. At 1240 the instrument phase began and lasted until 1320.

17. Agent McFarland then informed the accused that he had shown deception.

18. The post test phase continued for several hours. During this phase, McFarland threatened to leave.

19. Eventually, the accused made an oral inculpatory statement.

20. Agent McFarland then departed and Agent Boles continued the interrogation.

21. During the Boles interrogation, the accused made statements which were not as inculpatory as those made to McFarland.

22. Eventually Boles typed a statement, the accused signed it at 1633 and departed at 1645. (P.E. 8 ID)

23. During early 1992, the accused was informed by a radio broadcast that the investigation was to be reopened.

24. During this period there were a number of newspaper articles concerning his case, a Congressman got involved (not on his side) and a rape crisis counselor was also involved.

25. The accused was not on active duty and not training with his regular reserve unit.

26. The accused made many efforts to obtain a lawyer.

27. He approached civilian lawyers, civilian lawyers who were members of the Reserves and the Army Trial Defense Service.

28. In the United States, prior to 14 April 1992, he never retained nor was furnished a lawyer who could help him with the criminal investigation.

29. On 24 March 1992 and 14 April 1992, he was advised by the CID agents that if he desired a lawyer one would be furnished to him. He declined to request a lawyer.

30. Prior to 24 March 1992, the accused felt himself to be alone against the United States Government which was pursuing a criminal case against him.

31. As a last resort he asked MAJ Brault to accompany him to the CID interrogations.

32. MAJ Brault attended the 24 March interrogation but as noted was denied entry to the 14 April polygraph examination and interrogation.

33. During the entire polygraph examination/interrogation the accused had two breaks, one of five minutes and one for 20 minutes. He had access to food but only had a coke.

34. He was accompanied by no one.

35. Proper rights warnings were given and waived by the accused.

36. The test I used to determine if the accused's statement of 14 April was voluntary is—Was the confession the product of an essentially free and unconstrained choice by its maker?

37. In applying that test, I considered two other rules of law. First the government had the burden of convincing me by a preponderance of the evidence that the statement was voluntary. If they could not so convince me, the statement would not be admitted. Second, in determining the issue, the totality of the circumstances were to be considered.

38. In making my determination I considered that the accused believed himself to be alone against the government. Essentially all of his efforts to obtain legal counsel in the United States were fruitless. He was denied the accompaniment of MAJ Brault. It appeared to him that the media had chosen sides and was against him. The CID told him he had lied and gave him another scenario which it offered as the truth. He was not a member of an active duty unit which he could rely on for support and his reserve unit told him to train elsewhere.

39. With all these matters weighing on him and affecting him he cracked and gave up.

40. Although he could physically leave the motel suite, psychologically he could not.

41. Under these conditions he told the CID what it wanted to hear.

42. Under these conditions, his statement was not the product of an essentially free and unconstrained choice.

43. Under these conditions the government did not convince me by a preponder-

ance of the evidence that the statement was voluntary.

/s/ Herbert Green
HERBERT GREEN
COL, JA
Chief Circuit Judge