**UNITED STATES, Appellee,**

v.

**David J. MARTINEZ, Sergeant First Class U.S. Army, Appellant.**

No. 93–6001.
CMR Misc. No. 9202472.

U.S. Court of Military Appeals.

Argued June 2, 1993.
Decided Sept. 27, 1993.

For Appellant: *Captain Beth G. Pacella* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Major Fran W. Walterhouse* (on brief).

For Appellee: *Captain Gregory T. Baldwin* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Joseph A. Russelburg, Major James L. Pohl* (on brief).

*Opinion of the Court*

WISS, Judge:

On September 16, 1992, a military judge arraigned appellant at his general court-martial on charges of making a false official statement, forcible sodomy, and indecent assault, in violation of Articles 107, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 925, and 934, respectively. At a November 9, 1992, pretrial session under Article 39(a), UCMJ, 10 USC § 839(a), appellant moved to suppress his confession of April 14, 1992. After closely contested litigation of this motion, including testimony of expert witnesses and over 75 recorded pages of testimony from appellant himself, the military judge granted the motion to suppress and entered

findings in support of his ruling. The next day, on November 12, trial counsel served notice on the military judge of the Government's intent to appeal this ruling. *See* Art. 62, UCMJ, 10 USC § 862 (1983); RCM 908, Manual for Courts–Martial, United States, 1984.

In the course of considering that appeal, the Court of Military Review ordered the military judge to make additional findings of fact. On January 20, 1993, one week later, the military judge did so. Then, on February 4, 1993, the Court of Military Review held that the military judge had erred as a matter of law in suppressing appellant's confession, 36 MJ 819.

In due course, appellant filed a petition in this Court for review of that decision and, pursuant thereto, a motion to hold his trial in abeyance. We granted both the petition, 38 MJ 170, and the motion, 37 MJ 238, and, after receiving full briefs from both parties, entertained oral argument. Now, we hold that the military judge did not legally err in suppressing appellant's confession of April 14, 1992, on the basis of the facts that he found.

I

Appellant is a member of an Army Reserve unit in Santa Fe, New Mexico. When his unit was activated for service in Saudi Arabia for Operation Desert Shield/Desert Storm, appellant accompanied his unit. There, he is alleged to have committed forcible sodomy and an indecent assault on a female subordinate in his command. Although an investigation into his alleged misconduct began in Saudi Arabia in January 1991, the military judge found that "[a]pparently, no action was taken to end the matter prior to the accused's departure from Saudi Arabia." On December 10, 1991, appellant received an administrative letter of reprimand, and he believed the matter was behind him.

"During early 1992, [however,] the accused was informed by a radio broadcast that the investigation was to be reopened." Apparently in response to press and congressional interest in the case, the Criminal Investigation Command (CID) had decided to further pursue the investigation. In March 1992, CID Agent Boles attempted to telephone appellant; after several attempts back and forth to call each other, appellant finally reached Boles, and an interview between the two was arranged for March 24 at Kirtland Air Force Base, New Mexico.

Appellant arrived at that interview accompanied and supported by Major Brault, an active-duty member of appellant's reserve unit who is not a lawyer. Appellant was properly warned of his rights, which he waived. At the end of that interview, appellant signed a statement—the admissibility of which is not here in issue—admitting that he had engaged in *consensual* oral sodomy with the woman in question. Appellant agreed to take a polygraph examination at a later date, and Boles agreed that Major Brault could witness that test.

■ On April 14, appellant and Major Brault arrived for the polygraph at a motel in Albuquerque, New Mexico. Boles, however, told Major Brault that he could not be present during the examination because the room was too small and because his attendance would probably make appellant nervous.

CID Agent McFarland conducted the polygraph examination, with Boles present. Before the examination began, appellant again was advised of his rights and waived them. The following findings of fact by the military judge reflect how the events transpired:

16. The pre-test phase began at 0905 and continued until 1055. After a five minute break, the phase continued until 1155. The parties reconvened at 1215. At 1240 the instrument phase began and lasted until 1320.

17. Agent McFarland then informed the accused that he had shown deception.

18. The post test phase continued for several hours. During this phase, McFarland threatened to leave [unless appellant told the truth].

19. Eventually, the accused made an oral inculpatory statement.

20. Agent McFarland then departed and Agent Boles continued the interrogation.

21. During the Boles interrogation, the accused made statements which were not as inculpatory as those made to McFarland.

22. Eventually Boles typed a statement, the accused signed it at 1633 and departed at 1645.

Concerning finding 21, the record indicates that each time appellant said anything to Boles that tended to be less inculpatory than what he earlier had said to McFarland during the polygraph, Boles challenged appellant on the deviation; in each such instance, appellant ultimately returned to the more inculpatory version.

As indicated earlier, appellant did decline an attorney on both March 24 and April 14. Important to the question of whether appellant's April 14 statement was a product of his overborne will, however, the military judge also found: "Between late 1991 and mid 1992, the accused made numerous efforts to obtain a lawyer, including contacting Reservists, contacting Fort Bliss, the TDS [Trial Defense Service of the Army] here, and contacting Colonel Byrd at Fort Hood, and essentially, he was denied a lawyer at every turn." After entering his factual findings, the military judge ruled as follows:

Now, with respect to the statement given to Mister Boles on the 14th of April. I've considered this as a question of voluntariness and the totality of the circumstances. And I've considered everything that was presented by both sides, including the testimony of Mister Widup and the testimony of Doctor Furday, and I find that most of that testimony, I could have done without. Nevertheless, to me the standard to be considered in this case was set out in *Arizona versus Fulminante,* and that is, "Was the statement, based on the totality of the circumstances, one of a free and unconstrained choice of the maker," and I'm not satisfied by a preponderance of the evidence that that standard has been met. Ac-

cordingly, that statement will not be admitted to this court-martial.

Trial counsel then asked whether the military judge "would . . . be willing to make a more detailed finding of fact as to what the factors in the totality of the circumstances were?" The military judge responded:

Not without reading the record. But I'm satisfied from everything I heard, and like I said, the totality of the circumstances, that it just wasn't voluntary. *I'll tell you what it was. Well, I'm not going to go down every little factor, but what impressed me was the accused's testimony, not the testimony of the experts. It was what happened there. I really believe that they used some form of psychological coercion. Well, I don't find that the police intentionally corrupted the polygraph. . . . I think they honestly did it, but I think they overbore his will, based on everything I heard.* But I'm not going to go down every specific fact without going over the testimony.

(Emphasis added.)

Of course, as indicated earlier, the Court of Military Review subsequently ordered the military judge to make additional factual findings, which he did after reading the record of the proceeding. The relevant findings in support of his ruling are as follows:

24. During this period there were a number of newspaper articles concerning his case, a Congressman got involved (not on his side) and a rape crisis counselor was also involved.

25. The accused was not on active duty and not training with his regular reserve unit.

26. The accused made many efforts to obtain a lawyer.

27. He approached civilian lawyers, civilian lawyers who were members of the Reserves and the Army Trial Defense Service.

28. In the United States, prior to 14 April 1992, he never retained nor was

furnished a lawyer who could help him with the criminal investigation.

\*    \*    \*

30. Prior to 24 March 1992, the accused felt himself to be alone against the United States Government which was pursuing a criminal case against him.

31. As a last resort he asked MAJ Brault to accompany him to the CID interrogations.

32. MAJ Brault attended the 24 March interrogation but as noted was denied entry to the 14 April polygraph examination and interrogation.

33. During the entire polygraph examination/interrogation the accused had two breaks, one of five minutes and one for 20 minutes. He had access to food [though apparently none was in the room] but only had a coke.

34. He was accompanied by no one.

Furthermore, in those additional findings ordered by the Court of Military Review, the military judge offered insight to his thinking that underlay his ruling:

36. The test I used to determine if the accused's statement of 14 April was voluntary is—Was the confession the product of an essentially free and unconstrained choice by its maker?

37. In applying that test, I considered two other rules of law. First the government had the burden of convincing me by a preponderance of the evidence that the statement was voluntary. If they could not so convince me, the statement would not be admitted. Second, in determining the issue, the totality of the circumstances were to be considered.

38. In making my determination I considered that the accused believed himself to be alone against the government. Essentially all of his efforts to obtain legal counsel in the United States were fruitless. He was denied the accompaniment of MAJ Brault. It appeared to him

that the media had chosen sides and was against him. The CID told him he had lied and gave him another scenario which it offered as the truth. He was not a member of an active duty unit which he could rely on for support and his reserve unit told him to train elsewhere.

39. With all these matters weighing on him and affecting him he cracked and gave up.

40. Although he could physically leave the motel suite, psychologically he could not.

41. Under these conditions he told the CID what it wanted to hear.

42. Under these conditions, his statement was not the product of an essentially free and unconstrained choice.

43. Under these conditions the government did not convince me by a preponderance of the evidence that the statement was voluntary.

II

The Court of Military Review quickly narrowed the scope of its focus on appeal from this ruling. First, the court acknowledged that the military judge's findings of fact were supported by the evidence of record and not clearly erroneous and, therefore, could not be disturbed, see Art. 62(c); *United States v. Burris*, 21 MJ 140, 144 (CMA 1985). Then, referring specifically to findings 36 and 37, *supra*, of the additional findings, the court agreed that the military judge "applied the correct tests to determine if a statement is voluntary and the burden the government is required to meet for admissibility of the statement." 36 MJ at 821.

▇ Thus, the court proceeded to determine whether the military judge, applying these facts to the correct legal principles, erred when he concluded that appellant's statement of April 14 was involuntary.\*

---

\* For appellant's statement to be constitutionally involuntary in violation of due process, it is necessary as a predicate to find "coercive police activity." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986).

*See United States v. Norfleet*, 36 MJ 129, 131 (CMA 1992). The Court of Military Review assumed that the military judge found such activity, since the judge is presumed to know and follow the law—although, of course, the appel-

Holding that, contrary to the judge's ruling, the confession was voluntary, the court pointed to appellant's waiver of his rights; the fact that he was "physically free to leave" the motel room; its view that, while the session lasted many hours, "what occurred during the sessions was not oppressive so as to overbear his will"; and its view that appellant's psychological perception of him-against-the-world "was also not enough to critically impair his capacity for self-determination." 36 MJ at 822.

As the court below noted, a determination of whether a confession is "the product of an essentially free and unconstrained choice of its maker," *see Colombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961)(opinion of Frankfurter, J.), requires an assessment of "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). *Accord Arizona v. Fulminante,* 499 U.S. 279, 285, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). The first two factors upon which the Court of Military Review relied, while relevant to this inquiry, are not especially compelling under circumstances in which the claim is one of *psychological* coercion that caused the suspect to "crack[ ]" and "give up" *during* the session.

■ The second two factors, on the other hand, appear to be the heart of the disagreement between the court below and the military judge. Given that " 'the ultimate issue of "voluntariness" is a legal question ...,' " *id.* at 287, 111 S.Ct. at

1252, *quoting from Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985), we owe no special deference to either view in reaching our own. *See* S. Childress and M. Davis, 2 *Federal Standards of Review* § 11.13 (Findings on Confessions and Admissions) at 11–52 to 11–58 (2d ed.1992).

■ We are influenced, however, by the fact that the military judge was particularly impressed with appellant's own testimony. In listening to testimony that covers over 75 pages of the record and in watching appellant carefully in the course of delivering it—his manner and demeanor—the military judge was in a unique position to decide the appropriate weight to give appellant's assertion of an overborne will. His vantage point is one that simply cannot be reproduced, either by the Court of Military Review or by this Court. Where, as here, the military judge expresses special influence of that unique viewpoint on his judgment, that expression must weigh heavily in our reaching our own determination.

Surely, there are worse recorded cases of psychological coercion. On the other hand, the military judge's detailed findings about what went on during the session and the atmosphere surrounding the session just as surely do offer support to a legal conclusion of involuntariness. *See generally United States v. Handsome,* 21 USCMA 330, 45 CMR 104 (1972); *United States v. Planter,* 18 USCMA 469, 40 CMR 181 (1969); *see also Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

late court disagreed with that implicit finding. For reasons more fully discussed in the opinion, *infra,* we agree with the military judge that the combined actions of Agents Boles and McFarland satisfy the constitutional predicate of "coercive police activity."

Of course, as the Supreme Court itself observed in *Colorado v. Connelly, supra,* even if a confession may be constitutionally "voluntary" due to absence of "coercive police activity," the confession nonetheless "might be proved to be quite unreliable [due to the mental state of the

suspect], but this is a matter to be governed by the evidentiary laws of the forum, and not by the Due Process Clause...." 479 U.S. at 167, 107 S.Ct. at 521 (citation omitted). *See generally United States v. Gipson,* 24 MJ 246, 251 (CMA 1987)("For any type of evidence to have logical relevance [in the context of Mil.R.Evid. 401,] ... some degree of reliability is implicit."); *see also* Mil.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice....").

■ "Totality of the circumstances" does not connote a cold and sterile list of isolated facts; rather, it anticipates a holistic assessment of human interaction. When the military judge considered the details of the session in the context of appellant's psychological state, he concluded that appellant "cracked and gave up"; that appellant "told the CID what it wanted to hear." Acknowledging the military judge's expressed reliance on appellant's own testimony and his special vantage point in evaluating that testimony, we believe that his conclusion should be sustained. We hold, therefore, that the Government did not show, by a preponderance of the evidence, that appellant's statement of April 14, 1992, was voluntary.

## III

The decision of the United States Army Court of Military Review is set aside, and the ruling of the military judge—that appellant's statement of April 14, 1992, was involuntary and thus inadmissible—is reinstated. Our earlier order granting appellant's motion to hold his court-martial in abeyance pending this decision is set aside. The record is returned to the Judge Advocate General of the Army for remand to the military judge so that trial may now proceed.

Judges COX and CRAWFORD, and Senior Judge EVERETT concur.

Judge GIERKE did not participate.

SULLIVAN, Chief Judge (concurring in the result):

My inquiry to determine voluntariness involves two questions:

> [First,] whether the techniques for extracting the statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means.... [Second,] whether the defendant's will was in fact overborne.

*Miller v. Fenton,* 474 U.S. 104, 116, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985). With respect to the latter, I find that the military judge's factual conclusion that appellant's will was overborne is deserving of great weight in the voluntariness analysis. With respect to the former, appellant was denied due process of law. He was essentially an unwanted reservist who was repeatedly rejected by military counsel. Furthermore, he was denied even the traditional protection of his superior officer and was subjected to substantial interrogation pressures. *See Mincey v. Arizona,* 437 U.S. 385, 398–402, 98 S.Ct. 2408, 2416–2419, 57 L.Ed.2d 290 (1978); *see also Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).