UNITED STATES, Appellee

v.

Cliff T. LINCOLN, Fire Controlman
Second Class, U.S. Navy,
Appellant.

No. 94 6005.
CMR No. 94 0425.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 14, 1994.

Decided Sept. 1, 1995.

For Appellant: *Major Steven P. Hammond*, USMC (argued).

For Appellee: *Major Laura L. Scudder*, USMC (argued); *Colonel J. Composto*, USMC.

*Opinion of the Court*

GIERKE, Judge:

1. Appellant is charged with committing an indecent act upon his 3–year–old daughter, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. At his court-martial the military judge granted a defense motion to suppress appellant's pretrial confession. The Government appealed the military judge's ruling under Article 62, UCMJ, 10 USC § 862 (1983). The Court of Military Review* reversed the military judge's ruling and ordered the confession to be admitted in evidence subject to corroboration. 40 MJ 679, 682 (1994). This Court granted review of the following issues:

**I**

WHETHER THE LOWER COURT ERRED IN ITS RULING ON AN ARTICLE 62 APPEAL BY FAILING TO REMAND THE RECORD FOR CLARIFICATION OF THE MILITARY JUDGE'S INCOMPLETE AND AMBIGUOUS RULING.

**II**

WHETHER THE LOWER COURT ERRED BY EXCEEDING THE SCOPE OF REVIEW UNDER ARTICLE 62 BY MAKING RULINGS OF LAW ON ISSUES NOT DECIDED BY THE MILITARY JUDGE.

We answer both questions in the negative, but we hold that the court below exceeded its authority by mandating admission of the evidence.

*Factual Background*

2. Before entry of pleas, defense counsel moved to suppress appellant's confession to Special Agent Dortch, a polygraph examiner for the Naval Criminal Investigative Service (NCIS). Appellant's motion to suppress recited five grounds: (1) that appellant's "will was overborne due to his mental state of mind making the confession involuntary"; (2) that his confession was "involuntary due to the [NCIS] agent's coercive activity"; (3) that appellant "was denied pretrial effective assistance of counsel"; (4) that appellant's "statements were taken in violation of" Mil.

---

*See 41 MJ 213, 229 n. * (1994).

R.Evid. 305(e) and 305(f), Manual for Courts–Martial, United States, 1984; and (5) that appellant's right to silence was violated on September 14, 1993, when appellant's supervisor ordered him to report to NCIS. Appellate Exhibit (App.Ex.) IV at 1.

3. During the suppression hearing, NCIS Special Agent (SA) Carol Cacciaroni testified that in July of 1993 she received a report that appellant's daughter had accused him of molesting her. She requested that someone on the "East Coast" interview the daughter, her mother, and the daughter's therapist. On September 10, 1993, after the requested interviews had been completed, she contacted appellant and told him that she "needed to see him in [her] office at 1300 on that Friday, Friday the 10th." Appellant told SA Cacciaroni that "he had plans in the afternoon and was wondering if he could make it earlier." The meeting was scheduled for 12:30 p.m.

4. When appellant arrived, SA Cacciaroni orally advised him of his rights under Article 31, UCMJ, 10 USC § 831. He executed a written waiver of his rights. Appellant told SA Cacciaroni that he thought his ex-wife "was trying to ruin him." Appellant described his activities during the time that he was accused of molesting his daughter, and he denied committing the offense, commenting that such conduct was "really sick."

5. SA Cacciaroni asked appellant if he was willing to provide a "voluntary sworn statement," and appellant said, "Yes." She asked appellant if he was willing to take a polygraph examination, and "he said he wanted to think about that." As SA Cacciaroni began to "prepare to take his voluntary sworn statement," appellant "said he wanted to think about that as well." SA Cacciaroni told appellant, "No problem, it's voluntary. If you don't want to give it you don't have to give it." SA Cacciaroni then terminated the interview. She told appellant "to get back to me with his decision[.]"

6. On September 14, SA Cacciaroni called appellant and asked "if he had made his decision." He told her that he had an appointment with a lawyer at the Naval Legal Service Office. She told him, "Okay, just let me know what your decision is." Appellant responded, "Fine."

7. On September 15, appellant called SA Cacciaroni and told her he had consulted with Lieutenant Kelly at the Naval Legal Service Office. Appellant told SA Cacciaroni that LT Kelly had told him that "they do not have an attorney-client relationship" and "that if he didn't do anything wrong to just go ahead and talk to them and take the polygraph."

8. LT Kelly had no specific recollection of advising appellant but described what advice he would have given if appellant had sought advice. LT Kelly stated that, unless authorized to be the person's counsel, he would advise the person that he "was not authorized to establish an attorney-client relationship at that time." He would simply advise the person to "continue to remain silent" and that it is a "bad idea" to make any statements to NCIS and "that making any statement to NCIS, even if one believed oneself innocent, was dangerous." He would further advise against submitting to a polygraph examination. (App.Ex. VIII)

9. SA Cacciaroni asked appellant if he had decided whether to provide a statement and take the polygraph. Appellant responded that "he was confused" and had an appointment with a counselor at the Family Service Center. SA Cacciaroni told him, "That's fine, just give me a call back."

10. Appellant called SA Cacciaroni during the late afternoon on September 16 and said he had decided to provide a statement and take the polygraph examination. She told him that she would arrange the polygraph and then contact him.

11. On the morning of September 17, SA Cacciaroni called appellant and told him to come to her office. Appellant arrived before 9:00 a.m. and met with SA Dortch, the polygraph examiner. He did not see SA Cacciaroni until later in the day.

12. SA Dortch escorted appellant to the interview room and explained the polygraph procedures. He advised appellant of his Article 31(b) rights and secured a written waiver from him. SA Dortch was aware that

appellant had talked with a lawyer, so he asked appellant "if he had any problem talking with me without an attorney present." Appellant responded in the negative. SA Dortch did not ask him with whom he had consulted or if he was "represented by an attorney." SA Dortch testified that he assumed that "if he had already made contact with counsel, that, you know, that our obligation had been completed as far as him being able to see the attorney." According to SA Dortch, appellant did not indicate at any time that "he wanted a lawyer present or was confused about his rights to a lawyer."

13. SA Dortch then showed appellant what questions would be asked during the polygraph examination. (App.Ex. XVII) After the polygraph examination was completed, SA Dortch told appellant that "in my opinion, he was not being truthful when responding to the questions and [I] advised him that as far as I was concerned, I believed that he, in fact, was culpable concerning the molestation of his daughter." Appellant made "a couple of denials," and SA Dortch "confronted those denials, advised him that I did not believe him." Appellant then admitted removing his daughter's panties and "plac[ing] his bare penis against her bare buttocks."

14. SA Dortch then questioned appellant about the incident "three different times with him, making sure in my mind that it was consistent with what he was—had told me initially[.]" SA Dortch then reduced appellant's oral admissions to writing, gave it to appellant for his review, and then swore him to it.

15. SA Dortch released appellant at 2:00 p.m. and contacted SA Cacciaroni to ensure that "when he was released back to command that they did provide him some type of counseling." Because appellant was remorseful, SA Dortch told SA Cacciaroni that he was concerned about the possibility of suicide.

16. SA Cacciaroni did not see appellant until "a little after 1400." Appellant was upset and tearful. He told SA Cacciaroni that "he was sorry he wasn't truthful with me prior" and that "he had to be honest with himself before he could be honest with any-body else." SA Cacciaroni offered to contact a counselor if appellant wanted to talk to someone. Appellant indicated that he wanted to talk to a counselor. SA Cacciaroni contacted the counselor and told her that appellant was "on his way" and then released appellant "on his own."

17. Appellant's written motion to suppress (App.Ex. IV) contains a 12–page single-spaced factual recital. The motion avers that appellant "will take the stand for the limited purpose to deny that the statement was voluntary and testify about the circumstances under which it was given." App. Ex. IV at 15.

18. Contrary to this recital, however, appellant did not testify, present any evidence, or make any oral argument on the motion. At the conclusion of the Government's evidence on the motion, the defense asked the military judge to grant the motion to suppress on the ground that "the Government had not met its burden by preponderance of the evidence." After a short recess, assistant trial counsel presented his argument, frequently interrupted by the military judge's questions about compliance with Article 31(b).

19. After assistant trial counsel completed his argument, the military judge asked defense counsel, "Do you care to argue at this time?" Defense counsel responded, "Well, I only care to argue if you decide not to grant the motion." The military judge then granted the motion to suppress on the ground that "[t]here's a clear violation of Article 31(b) in this case" and asked defense counsel to "prepare some proposed findings of fact."

20. With some modification, the military judge adopted the proposed findings and made conclusions of law intermingled with his findings of fact. The military judge found the following:

(1) That on September 10, 1993, appellant "was contacted by SA Cacciaroni to inform [appellant] of the charges against him and to question him"; that appellant "reported to SA Cacciaroni for that purpose"; that SA Cacciaroni informed appellant "of the

charges against him and read him his Article 31(b) rights"; that SA Cacciaroni asked appellant if he wanted to make a sworn statement and submit to a polygraph, and appellant "answered that he did not at this time and that he wanted to think about it."

(2) That on September 14, 1993, SA Cacciaroni again contacted appellant, and he informed her that he had an appointment to see a Navy lawyer; that appellant informed SA Cacciaroni that "he did specifically not want to decide whether to submit a sworn statement or submit to a polygraph until he had consulted with a lawyer, that is, consulted within the meaning of Article 31(b) of the UCMJ," and that SA Cacciaroni "fully understood the meaning of [appellant's] request." The military judge found further that SA Cacciaroni "had an obligation as a law enforcement agent of the United States to ensure compliance with Article 3[1](b) of the UCMJ."

(3) That on September 15, 1993, appellant met with LT Kelly; that LT Kelly "was not informed of any of the specific facts of this case"; that LT Kelly told appellant that he "could not form an attorney-client relationship"; "that LT Kelly did not form an attorney-client relationship with" appellant; and that LT Kelly gave appellant the general advice set out in LT Kelly's statement, *i.e.*, that it is inadvisable to make any statements to NCIS (no one could compel him to do so); or to submit to a polygraph examination.

(4) That on September 16, 1993, appellant told SA Cacciaroni that he had met with LT Kelly; that he had not formed an attorney-client relationship; "that he was still confused about his right to counsel"; and that he was "still unsure about" making a statement or submitting to a polygraph examination. The military judge also found "as a fact that that communication to Special Agent Cacciaroni was understood by her not to be in compliance with the consultation portion of Article 31(b), consultation of a lawyer; that she knew that that communication didn't comply with his right to consult with a lawyer."

(5) That evidence of appellant's consultation with a counselor (App.Ex. XIII) was provided to SA Dortch before he conducted the polygraph examination, reflecting appellant's confusion, "so that the fact of noncompliance with Article 31(b) of the UCMJ was clearly available to Special Agent Dortch."

21. The military judge concluded that the Government had "not met its burden of proving" compliance with Article 31(b), citing *United States v. Martinez*, 38 MJ 82 (CMA 1993), as "[t]he case most directly on point."

22. In its Article 62 appeal before the Court of Military Review, the Government argued that the right to counsel was inapplicable because appellant's interrogation was not custodial. Addressing the military judge's citation of *United States v. Martinez*, *supra*, the Government argued that *Martinez* was inapposite and that a finding of fact of psychological coercion was "totally without support in the record and, therefore, is clearly erroneous." Brief of United States before CMR at 9–12, 16–17, 21.

23. Counsel for appellant argued that appellant's waiver of his rights on September 17 was involuntary. They also argued that appellant was subjected to custodial interrogation on September 10 and 17, that he invoked his right to counsel, and that SA Dortch violated appellant's right to counsel by interrogating him without the presence of an attorney, in violation of the rule announced in *United States v. McOmber*, 1 MJ 380 (CMA 1976). Answer to Final Brief at 13, 14, 16–19.

24. The Court of Military Review concluded that the military judge erred by relying on Article 31(b) to find a right to counsel. That court further held that "there is no evidence in the record to support a finding that at any time in the course of these proceedings the actual requirements of Article 31(b) were not observed." The court went further to say, "Having disposed of the military judge's legal basis for his ruling, we nonetheless feel obliged to continue with an analysis of the case on the possibility that the military judge's ruling is otherwise supportable." 40 MJ at 687. This last comment by the Court of Military Review is the basis for the second issue raised by appellant—that

the Court of Military Review exceeded its authority under Article 62.

## Discussion

■ 25. There is no dispute about the Government's right to appeal in this case. The issues before us concern the scope of review of that appeal by the Court of Military Review, now the Court of Criminal Appeals. When deciding an appeal under Article 62, a Court of Criminal Appeals "may act only with respect to matters of law." Art. 62(b). Accordingly, unlike appeals under Article 66(c), UCMJ, 10 USC § 866(c), a Court of Criminal Appeals may not make findings of fact in this case. On questions of fact, the appellate court is limited to determining whether the military judge's findings are clearly erroneous or unsupported by the record. If the findings are incomplete or ambiguous, the "appropriate remedy ... is a remand for clarification" or additional findings. *See United States v. Kosek,* 41 MJ 60, 64 (CMA 1994).

■ 26. Article 62 was intended to provide the Government with a right of appeal similar to that applicable in federal civilian courts under the Criminal Appeals Act, 18 USC § 3731. H.R.Rep. No. 549, 98th Cong., 1st Sess. 19 (1983), *reprinted in* 1983 *U.S.Code Cong. & Admin.News* 2184–85. The Government initially determines the scope of the appeal by deciding which issues to appeal and the grounds on which to appeal. *See* RCM 908(b), Manual for Courts-Martial, United States, 1984. When the Government appeals an adverse ruling, the defense may assert additional or alternate grounds for affirming the ruling. *Dandridge v. Williams,* 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 1156–57 n. 6, 25 L.Ed.2d 491 (1970); *United States v. Becker,* 929 F.2d 442, 447 (9th Cir.), *cert. denied,* 502 U.S. 862, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991); *United States v. Swarovski,* 557 F.2d 40, 49 (2d Cir.1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978); *United States v. Finn,* 502 F.2d 938, 940 (7th Cir. 1974); *United States v. Moody,* 485 F.2d 531, 534 (3d Cir.1973); C. Wright, A. Miller, and E. Cooper, 15B *Federal Practice and Procedure: Jurisdiction* 2d § 3919.3 at 627.

■ 27. The military judge in this case ruled that appellant's right to counsel was violated. A suspect is entitled to counsel during custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After a suspect knowingly and voluntarily waives his rights, interrogators may continue questioning unless and until a suspect unequivocally requests an attorney. *Davis v. United States,* — U.S. —, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Similarly, once a suspect waives the right to silence, interrogators may continue questioning unless and until the suspect unequivocally invokes the right to silence. *Coleman v. Singletary,* 30 F.3d 1420 (11th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1801, 131 L.Ed.2d 727 (1995).

■ 28. Appellant argued before the court below that he was entitled to assistance of counsel because his interrogation was "custodial." The Government argued that the interrogation was not "custodial." Whether an interrogation is "custodial" is "largely a question of fact, although the ultimate conclusion is a legal one." *United States v. Schake,* 30 MJ 314, 318 (CMA 1990). The military judge made no findings of fact or conclusions of law regarding the question whether appellant's interrogation was "custodial."

29. At trial and before the court below, defense counsel argued that appellant's confession was involuntary, citing *United States v. Martinez,* 38 MJ 82 (CMA 1993), a case involving psychological coercion. Before the court below, the Government argued that *Martinez* was inapposite because there was no evidence of psychological coercion. The military judge cited *Martinez,* but made no findings of fact or conclusions of law regarding psychological coercion.

■ 30. Before this Court, appellant asserts that the Court of Military Review erred by ruling on issues not decided by the military judge. He cites *United States v. Kosek, supra,* for the proposition that an appellate court may not rule on issues of law not

decided by the military judge. Supplement at 13. He apparently relies on our holding in *Kosek* "that the Court of Military Review erred in that it exceeded the scope of review under Article 62 by making rulings of law on issues either not decided by the military judge or on which the military judge's rulings were ambiguous or incomplete." 41 MJ at 64.

31. Our holding in *Kosek* was limited to the factual and legal context of that case. There the military judge's ruling under review by the Court of Military Review was dependent upon a predicate legal conclusion that was not articulated on the record. This predicate legal conclusion was in turn dependent upon factual findings that were not made by the military judge. It was impossible to determine from the record whether the military judge had ruled on key predicate issues or even what he had ruled. The Court of Military Review in *Kosek* was faced with a pyramid of unresolved predicate legal issues dependent upon missing factual findings.

32. We preceded our analysis in *Kosek* with the following introductory statements:

> After reviewing the record of trial, including the military judge's findings of fact, legal analysis, and conclusions of law, we conclude that the military judge's findings of fact and conclusions of law are incomplete and ambiguous. Accordingly, the case must be remanded to the military judge for further proceedings.

41 MJ at 62. In short, we were presented with a record in *Kosek* that did not permit legal review. Appellant's case, unlike *Kosek,* presents us with a clear and unambiguous, yet erroneous, ruling by the military judge.

33. In fairness to appellate defense counsel, we recognize that our holding in *Kosek* can be read as limiting the scope of review of Article 62 appeals to legal issues ruled upon by the military judge. That was not our intent, however, and that was not the context in which *Kosek* was decided. The holding cited by appellant is limited to the unique facts of that case.

## Conclusions

34. Concerning Issue I, we agree with the court below that the military judge's ruling was erroneous. That court correctly held that Article 31(b) does not confer a right to assistance of counsel and that the military judge erred by ruling that the requirements of Article 31(b) were not observed. 40 MJ at 687. Nevertheless, the military judge's ruling was not "incomplete and ambiguous" as appellant asserts. Accordingly, the court below did not err by failing to remand the record for clarification.

35. Concerning Issue II, the court below was confronted with arguments by appellate defense counsel on alternate theories on which the military judge's ruling might be supportable. Since the defense is entitled to argue alternate grounds to support the military judge's ruling and did so in this case, it was proper for the Government to respond to those arguments and for the court below to consider them, to the extent possible on the basis of the record before them. Thus we hold that the court below did not err in the manner asserted by appellant, *i.e.,* "by making rulings of law on issues ... not decided by the military judge." ¶ 30.

36. The court below would have been within its authority under Article 62 if it had limited itself to holding that, based on the limited record before it, none of the grounds urged by the defense constituted a legal basis to uphold the military judge's exclusion of the evidence. The court below went further, however, and directed the military judge to admit the evidence subject to corroboration. By doing so, that court exceeded its authority by preemptively rejecting other possible grounds for excluding the evidence that were not developed on the limited record before the court.

## Decision

The decision of the United States Navy–Marine Corps Court of Military Review is set aside to the extent that it orders admission of the evidence subject to corroboration. That portion of the decision overturning the ruling of the military judge suppressing the evidence for a violation of Article 31(b) is af-

firmed. The record of trial is returned to the Judge Advocate General of the Navy for remand to the military judge, who may, *sua sponte* or on request of a party, permit additional evidence and argument on the questions of custodial interrogation and psychological coercion, or any other legal issues, and make findings of fact and conclusions of law thereon. He may "reconsider any other ruling on his own motion or upon request of a party." *United States v. Kosek,* 41 MJ 60, 65 n. * (CMA 1994); RCM 905(f).

Chief Judge SULLIVAN and Judge WISS concur.

COX, Judge (concurring):

37. Although I concur, I write to reflect upon a statement in the majority opinion that in my judgment may be overly broad and, although technically correct, may be misleading. That statement was: "The court below correctly held that Article 31(b) does not confer a right to assistance of counsel." ¶ 34. That is just as correct as saying, "The Fifth Amendment to the Constitution does not confer a right to assistance of counsel." That is correct, at least in the sense that you cannot find those words uttered in the Fifth Amendment, just like you cannot find them uttered in Article 31(b), Uniform Code of Military Justice, 10 USC § 831(b). However, all agree that a military member being interrogated while in custody has the right to a military lawyer. *United States v. Tempia,* 16 USCMA 629, 37 CMR 249 (1967); Mil. R.Evid. 305(d)(1)(A), Manual for Courts-Martial, United States, 1984. The member must be advised of this right.

38. Furthermore, *Tempia* gives us a rather broad definition of the idea of "custody." There, Judge Ferguson stated:

The test to be applied is not whether the accused, technically, has been taken into custody, but, absent that, whether he has been "otherwise deprived of his freedom of action in any significant way." *Miranda, supra,* at page 444, 86 S.Ct. at page 1612. Here the accused was clearly summoned for interrogation. Had he not obeyed, he would have undoubtedly subjected himself to being penalized for a failure to repair.

In the military, unlike civil life, a suspect may be required to report and submit to questioning quite without regard to warrants or other legal process. It ignores the realities of that situation to say that one ordered to appear for interrogation has not been significantly deprived of his freedom of action....

16 USCMA at 636, 37 CMR at 256 (citations omitted).

39. Importantly, in this case the Naval Criminal Investigative Service (NCIS) agents did indeed scrupulously advise appellant that he enjoyed the right to counsel. This advice was incorporated into the advice given pursuant to Article 31(b). Appellant most certainly understood the advice because he exercised his right to consult with counsel. Unfortunately, he was denied counsel.

40. Arguably, the NCIS agents perceived that appellant's "freedom of action" was being limited in a "significant way." Otherwise, why would they give the advice? And even if the advice was not required, should not the Government be bound by the lawful acts of its agents when they are acting within their scope of authority?

41. In any event, I agree with Judge Gierke that the court below overstepped the boundaries of the appeal under Article 62, UCMJ, 10 USC § 862. Appellant should have the opportunity to further litigate his motion to suppress. Among the questions remaining to be resolved is the query: What does it mean in terms of voluntariness to "waive" the right to counsel if counsel has just told you that you have no right to his services? *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

CRAWFORD, Judge (concurring in part and dissenting in part):

42. The majority (1) overlooks the impact of the 1970 revision of the government-appeals statute, 18 USC § 3731, and its influence on the enactment and interpretation of Article 62, Uniform Code of Military Justice, 10 USC § 862 (1983); and (2) holds that the court below exceeded its authority in order-

ing admission of the evidence after fair notice, adequate hearing, and development of the record to support mandating admission of the evidence. As a result, I fear that the majority unduly restricts the scope of review of an Article 62 appeal, thereby undermining the principle of judicial economy and public confidence in the legal system.

43. Generally, this Court will accept the findings of fact from a military judge unless they are clearly erroneous. *United States v. Burris*, 21 MJ 140, 143 n. 7, 144 (CMA 1985). Additionally, questions of law, such as the question of admissibility of a confession; who must warn, *United States v. Brown*, 40 MJ 152, 153 (CMA 1994); and who is a suspect, *United States v. Davis*, 36 MJ 337, 340 (CMA 1993), *aff'd on other grounds,* — U.S. —, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), will be reviewed *de novo. See also United States v. Abell*, 23 MJ 99 (CMA 1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987). But neither of these standards of review would preclude this Court or the court below from looking at undisputed facts in a record and addressing and deciding issues raised by each counsel.

44. I take issue with the majority's reliance upon the following language: "When the Government appeals an adverse ruling, the defense may assert additional or alternate grounds for affirming the ruling." ¶ 26. Implicit in this language is that the Government may not urge additional or alternative grounds for reversing a decision concerning admissibility of the evidence unless those grounds are certified by the Judge Advocate General. As will be discussed, this language overlooks the liberal construction of government appeals following the 1970 revision to the government-appeals statute. The result reached by the majority only encourages piecemeal litigation and undermines the truthfinding purpose of criminal trials.

45. It is also curious that the majority would permit the court below to conduct a full review of the issues raised in the record by the parties but would prohibit the court below from deciding these matters by ordering the military judge to admit the accused's pretrial confession subject to corroboration. Appellant now asserts that the judge's "failure to address the issues raised in the defense motion precluded the defense from presenting its evidence, and denied the defense a determination on the substance of its motion." Supplement at 10. I recognize that in most instances a record is returned to the convening authority or military judge via the appropriate Judge Advocate General for action consistent with the opinion. In this case, however, the court below ordered the judge to admit the confession subject to corroboration, implicitly finding that the defense was given notice, a chance to develop the record, and an adequate hearing to support its motion. If indeed the defense, for tactical or other reasons, did not present all of its evidence concerning voluntariness and custody at the motion hearing before the judge, then the remedy is a motion for reconsideration pursuant to RCM 905(f), Manual for Courts–Martial, United States, 1984, as the Court acknowledged in *United States v. Kosek*, 41 MJ 60, 65 n. * (CMA 1994). It would then be for the judge to review the additional matters claimed by the defense and the reason or reasons for not presenting that evidence at the first motion hearing.[1] The decision of the judge as to whether to grant such a motion for reconsideration would be reviewable under an abuse-of-discretion standard. This is an orderly procedure which, unlike the result reached by the majority, does not encourage unnecessary or unwarranted piecemeal litigation.

### FACTS

46. The defense moved to suppress appellant's confession to Special Agent Dortch, the polygrapher. The bases urged by the defense for the suppression, as required by Mil.R.Evid. 304(d)(2)(A), 304(d)(3), and 304(e)(3), Manual, *supra,* were Mil.R.Evid. 305(e) and (f); Article 31, UCMJ, 10 USC

---

1. I am unaware of what may have transpired in any RCM 802, Manual for Courts–Martial, United States, 1984, session and what bearing that may have on the appropriateness of a motion for reconsideration. Such conferences should only deal with administrative matters so no potential issue is implicated.

§ 831; and the Fifth and Sixth Amendments. The judge ruled that the statement was inadmissible under Mil.R.Evid. 305 and Article 31(b).

47. On appeal before the Court of Military Review, the defense argued that appellant's confession was involuntary and obtained during a custodial interrogation after appellant had invoked his right to counsel. ¶ 23. The Court of Military Review disagreed. In its review that court answered all the issues presented by the defense based upon the uncontested facts in the record.

## DISCUSSION

48. A brief discussion of the history of government appeals in criminal cases and its relationship to Article 62 will be helpful. In *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892), the Court held that, under our common law jurisprudence, absent explicit statutory authority, the prosecution lacks the right to appeal an adverse ruling in a criminal case. *See* 420 U.S. at 336, 95 S.Ct. at 1018. Whether this reliance upon common-law authority is still correct is a subject of disagreement. *See Arizona v. Manypenny*, 451 U.S. 232, 245 n. 20, 101 S.Ct. 1657, 1666 n. 20, 68 L.Ed.2d 58 (1981).

49. Partially in response to *Sanges*, "Congress passed the first Criminal Appeals Act" in 1907, "which conferred jurisdiction on" the Supreme Court "to consider criminal appeals by the Government in limited circumstances. 34 Stat 1246." *See* 420 U.S. at 336, 95 S.Ct. at 1018. That statute was replaced in 1970 with the present broader statute—18 USC § 3731. *See* 420 U.S. at 337, 95 S.Ct. at 1018–19.

50. Prior to 1983 the prosecution in the military justice system did not have the right to appeal an adverse ruling. In 1983 Article 62 was revised to provide for such a right.

51. Article 62(a)(1) now provides that

the United States may appeal an order or ruling of the military judge which terminates the proceedings with respect to a charge or specification or which excludes evidence that is substantial proof of a fact material in the proceedings.

There were a number of comments describing the reasons and purposes behind the 1983 revision. As was stated by Major General Hugh J. Clausen, the Judge Advocate General of the Army, in his prepared statement to the Senate Committee:

The amendment of Article 62 will parallel 18 U.S.C. section 3731 by authorizing appeals by the Government of certain adverse rulings by the trial judge, such as rulings on motions to suppress evidence or to dismiss charges. As in Federal courts, the military justice system should provide an avenue for the Government, as well as the accused, to seek reversal of legal error at the trial level, consistent with judicial economy and double jeopardy protections.

Hearings on S. 2521 Before a Subcomm. of the Senate Armed Services Comm., 97th Cong., 2d Sess. 46 (1982). The Judges of the United States Court of Military Appeals also prepared responses to questions from the Senate Armed Services Committee's Subcommittee on Manpower and Personnel, as follows:

The proposal to allow government appeals responds to the problem of an imbalance between the appellate rights of the accused and those of the Government; and this is an instance in which military justice should conform to the federal procedure, which allows such appeals. . . .

Hearings, *supra* at 177–78.

52. Since Article 62 is modeled on 18 USC § 3731, we can look to the interpretation and application of that statute for guidance in determining how we will apply Article 62. Specifically, the question here concerns the scope of appellate review.

53. Title 18 USC § 3731 is intended to broaden the Government's appeal rights. Since the language of 18 USC § 3731 was ambiguous, the legislative history made it clear that Congress intended to remove all statutory barriers to government appeals and to permit whatever appeals the Constitution would permit. *Arizona v. Manypenny*, 451 U.S. at 243 n. 18, 101 S.Ct. at 1665 n. 18 ("Congress manifested an intent to remove all statutory barriers to a criminal appeal taken by the Federal Government"); *United*

*States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1018–19, 43 L.Ed.2d 232 (1975); Conference Report No. 91–1768, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5848–49; Omnibus Crime Control Act, 84 Stat. 1880, *reprinted in* 1970 U.S.Code Cong. & Admin.News 2206, 2217. The Supreme Court also found in *Wilson* that "Congress decided to rely upon the courts to define the constitutional boundaries [of a government appeal] rather than to create a statutory scheme that might be in some respects narrower or broader than the Fifth Amendment would allow." 420 U.S. at 339, 95 S.Ct. at 1019. The statute has been interpreted as allowing any government appeal as long as the Double Jeopardy Clause is not offended—in effect, any appeal unless a trial court's action amounts to an "acquittal." *United States v. Di Francesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Contrary to the majority's liberal view of the scope of defense appeals (¶ 26), the interpretation of the present government-appeals statute is to permit symmetry between the parties. *United States v. Vuitch,* 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971), involved a direct appeal by the Government to the Supreme Court under the Criminal Appeals Act (18 USC § 3731) from a Federal District Court's dismissal of an indictment on the ground that the statute on which the indictment was based was void for vagueness. The Court would not permit the defense to assert additional grounds to uphold the dismissal of the indictment that were not advanced by the defense earlier. *Id.* at 72–73, 91 S.Ct. at 1299–1300. The Supreme Court in *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978), found that neither 18 USC § 3731 nor the Double Jeopardy Clause of the Fifth Amendment permits the Government to obtain relief from all of the adverse rulings that lead to the termination of a criminal trial in the defendant's favor. In *Sanabria,* the Court made it very clear that the constitutional right to double jeopardy had already attached, and thus, despite clearly erroneous trial rulings, they could not review those decisions for error. 437 U.S. at 74–78, 98 S.Ct. at 2184–86.

54. In light of the preference set forth by the Supreme Court "it seems inescapable that Congress was determined to avoid creating nonconstitutional bars to the Government's right to appeal." *United States v. Wilson,* 420 U.S. at 339, 95 S.Ct. at 1019.

55. Like 18 USC § 3731, Article 62 should be liberally interpreted, without requiring certification to advance additional grounds for admissibility of the same item of evidence if there has been fair notice to the parties, opportunity to be heard, and development of the record. This enhances public confidence in the legal system as well as judicial economy.

56. *Notice, Hearing, and Record.* This is not an instance of lack of sufficient notice or refusal to hear an issue in this case. As discussed earlier, the defense moved to suppress appellant's confession based upon several grounds. Both the Government and the defense had sufficient notice and an opportunity to be heard and develop a record on this motion. The military judge basically adopted appellant's proposed findings of fact as his own findings of fact. Those findings were neither facially ambiguous nor incomplete. Both the trial and appellate courts below decided the issues after affording the parties adequate notice and an opportunity to be heard and to develop a record. Certainly defendants should not be unduly subjected to the anxiety of an appeal by the Government. But a military defendant represented by military counsel, even though anxious, is not subjected to additional expenses or loss of pay while a government appeal is ongoing.

57. There may even be exceptions to the normal rules governing notice and the opportunity to be heard and develop a record. A case may still be heard on review even when there has not been fair notice, opportunity to be heard, and sufficient development of record. These instances may arise where a hearing is necessary to avoid manifest injustice or the court is seizing an opportunity for a needed announcement and clarification of a legal principle for guidance and further pro-

ceedings in the same case. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 29, 103 S.Ct. 927, 943–44, 74 L.Ed.2d 765 (1983). None of these instances, however, are present here.

58. *Public Confidence.* I am disturbed that this Court has at times shown a recent trend or tendency to suppress evidence which is otherwise reliable or to refuse to permit litigation on an issue raised before the trial court.[2] This tendency not only runs counter to the prevailing federal judicial trend, but also serves to undermine public confidence in our legal system. In *United States v. Grooters*, 39 MJ 269, 272–73 (CMA 1994), I believe the Court erroneously applied the so-called law-of-the-case doctrine to suppress an otherwise admissible confession. *But see United States v. Williams*, 41 MJ 134, 135 n. 2 (CMA 1994). In *United States v. Olivero*, 39 MJ 246, 251 (CMA 1994), I pointed out in my dissent that "the majority fail[ed] to allow the Government to establish at a post-trial hearing under Article 39(a), Uniform Code of Military Justice, 10 USC § 839(a), or a hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), an independent source for a second prosecution," thereby resulting in suppression of the evidence and setting aside the charges and specifications without allowing a rehearing. These cases similarly run counter to the truthseeking purpose of our criminal justice system and serve to undermine public confidence in that system.

59. Where, as in this case,[3] the record is developed, judicial economy demands that the issues raised by trial defense counsel and developed on the record be answered by the appellate courts. To do otherwise would run counter to the entire purpose of our criminal justice system as a truthseeking process. *Cf. United States v. Mezzanatto*, —— U.S. ——, ——, 115 S.Ct. 797, 803, 130 L.Ed.2d 697 (1995) ("The admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts."); *Solem v. Stumes*, 465 U.S. 638, 644, 104 S.Ct. 1338, 1342, 79 L.Ed.2d 579 (1984); *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980).

60. *Judicial Economy.* In addition to the fundamental goal of our criminal justice system to ensure truthfinding, a goal is to minimize the burdens on the defendant and government of unnecessary appellate litigation. Not to address and decide the issues that are developed on the record after sufficient notice and a hearing only encourages future piecemeal litigation and potential disruptive gamesmanship by counsel. As a practical matter, to avoid the limited hearings on appeals or revolving door procedures, military judges would be advised to adhere to their own advice to counsel. That is, judges would be wise to address all of the alternative issues raised surrounding the admissibility and inadmissibility of evidence. *Cf. United States v. Copening*, 34 MJ 28 (CMA 1992) (judge at post-trial conference advised prosecutor of alternative means of introducing evidence). But a judge's failure to do so should not serve to cut off a full review and resolution by an appellate court of those purely legal issues raised by the defense and so developed on the record by both the defense and the prosecution that there are no disputed issues of fact.

61. Based on the broad government appeal rights under Article 62, the truthseeking purpose of criminal trials, and judicial economy, I respectfully dissent from the majority opinion concerning the scope of review and reversing a direction of the court below to admit the evidence based on the present record. Our ruling, however, does not prohibit reconsideration under appropriate circumstances.

---

**2.** In *United States v. Kaliski*, 37 MJ 105 (CMA 1993), the majority mandated dismissal of the charges because, in its opinion, the alternative grounds for admissibility of the evidence were not developed since the judge had ruled the evidence admissible. *See also Cunningham v. Gilevich*, 36 MJ 94, 102 (CMA 1992)("[W]e cannot determine from the record whether the deci-sion to prosecute petitioners was based wholly or in part on their testimony....").

**3.** We have seen the majority split on a similar question of power over "Law of the Case." This Court has not fully addressed that issue and the various meanings and consequences of that phrase.