UNITED STATES, Appellant,

v.

Sergeant Josh R. RITTENHOUSE,
United States Army, Appellee.

ARMY MISC 20050411.

U.S. Army Court of Criminal Appeals.

13 Oct. 2005.

For Appellee: Captain Eric D. Noble, JA (argued); Colonel Mark Cremin, JA; Captain Charles L. Pritchard, Jr., JA; Captain Geoffrey S. DeWeese, JA (on brief).

For Appellant: Captain Abraham F. Carpio, JA (argued); Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Lieutenant Colonel Theresa A. Gallagher, JA (on brief); Lieutenant Colonel Michael E. Mulligan, JA; Major William J. Nelson, JA; Captain Jennifer R. Barrett, JA.

Before SCHENCK, Senior Judge, CLEVENGER, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT AND ACTION ON APPEAL BY THE UNITED STATES FILED PURSUANT TO ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE

JOHNSON, Judge:

The government's timely appeal under Article 62, Uniform Code of Military Justice 10 U.S.C. § 862 [hereinafter UCMJ], is granted. The military judge's decision to suppress evidence seized from Sergeant Rittenhouse's (appellee's) barracks room and to suppress oral statements and a portion of the written statement made by appellee to law enforcement officials is vacated.

### BACKGROUND

Appellee was charged with three violations of Article 134, UCMJ, 10 U.S.C. § 934. The

allegations included two specifications asserting a violation of the Child Pornography Prevention Act, 18 U.S.C. § 2252A, and one specification alleging that appellee engaged in conduct that was prejudicial to good order and discipline or service discrediting by possessing, in the barracks, "visual depictions of minors engaging in sexually explicit conduct." At arraignment, appellee's trial defense counsel moved to suppress evidence found during a search of appellee's computer and computer disks that were seized from his barracks room. The defense argued that the seizure and removal of these items was outside the scope of appellee's consent to search. Appellee's defense counsel also moved to suppress appellee's oral and written statements made in response to questioning by agents from the Criminal Investigation Division (CID) after he allegedly invoked his right to silence.

During the Article 39a, UCMJ, 10 U.S.C. § 839a, hearing on the suppression motions, the government presented the testimony of two CID agents. Special Agent (SA) Kristie Cathers testified that the investigation of appellee began when another soldier, Private First Class (PFC) Galemore, reported that he had witnessed sexually explicit pictures of children on appellee's computer. Special Agent Cathers testified that she contacted appellee's unit and had him report to the local CID office. Special Agent Cathers said that appellee was ordered to report to the CID office and that he was not free to leave. She informed appellee that he was suspected of possession, distribution, and/or production of material constituting or containing child pornography and he was further advised of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b), and *Miranda*.[1] Appellee acknowledged that he understood his rights

and was willing to make a statement without the presence of a lawyer.

Special Agent Cathers said that she presented appellee with CID Form 87–R–E, Consent to Search. Appellee signed the form, granting his consent to search his barracks room and "computers, hard disk drives, removable data storage media, portable data storage devices, cameras, photographs, movies, manuals, notebooks, papers, and computer input and output devices." His computer was described on the consent form as a custom built desktop computer.[2]

While appellee's barracks room was being searched, SA Cathers continued to interview appellee. After they talked for approximately an hour and a half, the CID agent provided appellee with a blank sworn statement form and told appellee to write down what they had discussed using "baby steps." She told him not to "close out" the statement "since they would have to do a question and answer session after he wrote out his narrative." The agent then left the room, checking on him periodically.

She returned later and asked appellee if he was done and he stated that he was. Special Agent Cathers then read his statement and saw that he had written "End of Statement" at the end of his narrative. The agent did not ask appellee what he meant by "End of Statement," but assumed that he wrote it because "he was a squared-away NCO" and that he automatically included this language at the end of all sworn statements. The words "End of Statement" were lined through and appellee initialed next to it as SA Cathers directed. Special Agent Cathers then began asking appellee questions about the crimes of which he was suspected. She recorded her questions and appellee's answers on the remainder of the sworn state-

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Consent to Search form also contained an unnumbered subsection under the specifically delineated places to be searched which stated: I am authorizing the above search(s) for the following general types of property which may be removed by the authorized law enforcement personnel and retained as evidence under the provisions of Army Regulation 195–5, or other applicable laws or regulations: Text, graphics,

electronic mail message, and other data including deleted files and folders, containing material related to the sexual exploitation of minors; and/or material depicting apparent or purported minors engaged in sexually explicit conduct; and data and/or information used to facilitate access to, possession, distribution, and/or production of such materials.
A copy of this consent form is attached as an Appendix.

ment form on which appellee wrote his narrative.

Special Agent John Lemke, the Special Agent in Charge of the Fort Wainwright CID office, also testified for the government. Special Agent Lemke was one of the agents who conducted the search of appellee's room. In accordance with standard forensic practice, the agents did not view any files or data contained on the computer or disks while they were in the room. Instead, the agents seized a computer and approximately three hundred computer disks that appeared to have something written on them so they could be searched later. The agents also seized some papers from appellee's room that contained "explicit language."

After the search was concluded, SA Lemke joined the interview of appellee. Appellee told SA Lemke that he had downloaded some child pornography and saved it to disks. Special Agent Lemke did not testify to any other oral statements made by appellee and appellee's written statement does not indicate at which point SA Lemke joined the interview.

The military judge found by clear and convincing evidence that appellee "voluntarily consented to a search of any computers, hard disks drives, removable data storage media, portable data storage media, portable data storage devices, cameras, photographs, movies, manuals, notebooks, papers, and computer input and output devices which were located in [appellee's] room on 14 April 2004." The military judge further found by clear and convincing evidence that appellee consented to removal from his barracks room of only those items listed in the unnumbered section between sections 5 and 6 of the Consent to Search form (Appendix).[3] The military judge found that the consent form did not authorize the seizure and removal of the items listed above that appellee allowed to be searched. The military judge also found that the evidence was not admissible pursuant to inevitable discovery because the government had no probable cause to search for or seize the items, no search authorization was sought, and there was no evidence the property would have been seized, absent the con-

sent to search. The military judge further found that the government did not offer specific information as to what PFC Galemore had seen or where and when he had seen it.

The military judge held that so much of appellee's statement that preceded the words "End of Statement" was admissible. However, she further held "that writing 'End of Statement' was an ambiguous or equivocal invocation of the right to remain silent." The military judge ruled that this required SA Cathers to immediately cease questioning or to clarify what appellee meant by "End of Statement." Special Agent Cathers did neither. Therefore, the military judge held that any statements by appellee after he wrote "End of Statement" were inadmissible, including the oral admission to SA Lemke.

## ANALYSIS

### STANDARD OF REVIEW

"When deciding an appeal under Article 62, we 'may act only with respect to matters of law.'" *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F.1995) (quoting Article 62, UCMJ, 10 U.S.C. § 862). Questions of law are reviewed *de novo*. *United States v. Kosek*, 41 M.J. 60, 63 (C.M.A.1994). On matters of fact we are "bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous." *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F.2004).

### APPELLEE'S STATEMENT

We agree with the military judge's finding that appellee's writing "End of Statement" after he finished the narrative portion was an equivocal invocation of his right to remain silent. The term "equivocal" means "[h]aving different significations equally appropriate or plausible; capable of double interpretation; ambiguous." *Coleman v. Singletary*, 30 F.3d 1420, 1425 (11th Cir.1994) (quoting 5 Oxford English Dictionary 359 (2d ed., J.A. Simpson & E.S.C. Weiner, eds., 1989)); *see also* Black's Law Dictionary 561 (7th ed.). That is exactly the scenario presented by this case. One interpretation of the inclusion of

---

3. *See, infra,* items listed in note 2.

the phrase is that appellee did not wish to provide *any* further information to law enforcement and this was the end of his *overall* "statement" to CID on the issue. However, an equally plausible interpretation is the one given to it by SA Cathers—that it simply signaled the end of appellee's *narrative* statement, not his intent to avoid answering any additional questions or making any further written or oral statements in the case.[4]

We disagree with the military judge, however, on the legal question of whether this equivocal invocation imposed a duty on the agent to ask clarifying questions regarding appellee's intent. In a similar context, the Supreme Court has held that, after a knowing and voluntary waiver of the right to counsel, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney. *Davis v. United States,* 512 U.S. 452, 462, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461–62, 114 S.Ct. 2350. The Eleventh Circuit Court of Appeals extended this rule to the invocation of the right to remain silent. *Coleman,* 30 F.3d at 1426; *see also United States v. Johnson,* 56 F.3d 947, 955 (8th Cir.1995). Our superior court has also cited the holding in *Coleman* approvingly, stating, "[O]nce a suspect waives the right to silence,

interrogators may continue questioning unless and until the suspect unequivocally invokes the right to silence." *Lincoln,* 42 M.J. at 320.

▮ Accordingly, we likewise hold that, after a suspect has waived his right to remain silent, if he subsequently makes an ambiguous or equivocal invocation of his right to remain silent, law enforcement agents have no duty to clarify the suspect's intent and may continue with questioning.[5] Thus, the agents had no duty to clarify appellee's equivocal statement and the subsequent questioning of him did not violate his right against self-incrimination. As such, the military judge's decision to suppress part of appellee's statement because CID agents did not either cease questioning or ask clarifying questions after appellee made an equivocal invocation of his right to remain silent is vacated.

## THE COMPUTER AND DISKS

### Law

▮ The Fourth Amendment to the United States Constitution mandates that, "[t]he right of the people to be secure ... against unreasonable searches and seizures, shall not be violated." The "touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801,

4. As the military judge found:

> Writing the phrase "End of Statement" at the conclusion of a sworn statement is common practice on all statements throughout the Army. With the length of time he has been in the Army and his grade of sergeant (E5), the accused can be presumed familiar with the custom of preparing a sworn statement form. One conclusion could be that the accused merely wrote "End of Statement" because one always writes that to close out a statement.

5. We are sensitive to appellee's argument that "[t]o protect against the subtle coercion that might arise in a military context, it is even more important that military investigators clarify possible invocations of a soldier's rights to counsel and silence." However, the Supreme Court considered a similar issue in *Davis,* a military case, and concluded:

> We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who—because of fear, intimi-

dation, lack of linguistic skills, or a variety or other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves. "Full comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process." A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted.

*Davis,* 512 U.S. at 460–61, 114 S.Ct. 2350 (citation omitted). Likewise, military suspects who are subjected to custodial interrogations are protected by both *Miranda* warnings, and, in many cases, Article 31(b), UCMJ, warnings. A suspect who knowingly and voluntarily waives his right to remain silent has indicated his willingness to speak with law enforcement or disciplinary authorities. To subsequently revoke that decision, he must affirmatively and unequivocally do so.

114 L.Ed.2d 297 (1991). A search conducted pursuant to a valid consent to search is constitutionally reasonable. *United States v. Roa*, 24 M.J. 297, 298 (C.M.A.1987). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251, 111 S.Ct. 1801.

If evidence is obtained in violation of the Fourth Amendment, it may still be introduced at trial "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by the lawful means." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984); *see also* Military Rule of Evidence [hereinafter Mil. R. Evid.] 311(b)(2). Where the government establishes that "the routine procedures of a law enforcement agency would inevitably [have found] the same evidence, the rule of inevitable discovery applies even in the absence of a prior or parallel investigation." *United States v. Owens*, 51 M.J. 204, 210–11 (C.A.A.F.1999).

### Discussion

We agree with the military judge's finding that appellee voluntarily consented to the search at issue in this case. *See* Mil. R. Evid. 314(e). Accordingly, there is no issue as to the validity of the consent to search. The issue is whether appellee gave consent to seize his computer and the computer disks discovered in his barracks room. In this regard, the military judge read the Consent to Search form too narrowly.

The consent form appellee signed specifically stated that appellee was consenting to a search of the property and places specified on the consent form. Appellee voluntarily consented to a search of his quarters, his computers, hard disk drives, removable data storage media, and portable data storage devices for material related to the sexual exploitation of minors. The Consent to Search form advised appellee that agents would be searching the above places for "text, graphics, electronic mail messages, and other data including deleted files and folders, containing material related to the sexual exploitation of minors." The bottom portion of block 5 of the form specifically stated that the "types of property" that were the subject of the search "may be removed by authorized law enforcement personnel and retained as evidence." Under these circumstances, we find that, because a reasonable person reading the consent form would have understood that the computer and disks could be seized,[6] the military judge's finding that the appellee only consented to the removal of the items specifically listed in the unnumbered section between blocks 5 and 6 was clearly erroneous. Instead, appellee's consent to search his computers and data storage media and devices necessarily included inherent authorization for agents to remove those items from his room to conduct a search in accordance with standard forensic practices.[7] *See United States v. Hephner*, 260 F.Supp.2d 763 (N.D.Iowa 2003), *aff'd on other grounds*, 103 Fed.Appx. 41, 46–47, 2004 U.S.App. LEXIS 10957, at **14–15 (8th Cir. June 4, 2004) (per curiam).

However, even if the seizure of the computer and the computer disks exceeded the scope of appellee's consent to search, we find that the evidence would have been inevitably discovered by the routine practices of law enforcement. The government possessed the following additional information:

---

**6.** This is particularly true given that appellee was informed that agents would be searching for "deleted files and folders," which presumably could not be discovered merely by turning on the computer and searching through the information contained within the hard drive. While the military judge found that "[n]o one asked the accused on 14 April 2004 if he or she could remove the computer or any other items listed in block 5d of Pros. Ex. 2," we find that a reasonable person reading the consent form would have understood that the computer and disks would have to be removed from the room to perform a search for such deleted files.

**7.** Although appellee was not present at the search, there is no evidence that he ever objected to the seizure of the computer or of the disks before the search of them was completed. This supports the finding that the scope of the consent to search was not exceeded in this case.

(1) Appellee made an oral statement to SA Lemke that he had viewed and downloaded child pornography on his computer and saved it to disks.

(2) In her findings of fact, the military judge found that, after appellee finished writing his narrative, SA Cathers continued the interview, "using the question and answer format depicted on the remainder of Pros. Ex. 3 for identification. She wrote down a question she asked and then wrote the accused's response."[8] Appellee's responses recorded on Prosecution Exhibit 3 for identification contain the following admissions:

    a. He had looked at pictures of naked children under the age of eighteen on his computer.

    b. To find these pictures on the internet, he had typed in search words like "sex."

    c. He looked at these pictures for sexual gratification, although the children were not doing "anything sexual besides being nude."

    d. He saved these photos onto "DVDs" rather than his computer and that he had saved roughly 1,000 nude pictures.

    e. He visited internet forums to view pictures of children and in the "thirteen to eighteen category" there were nude photos of children.

    f. He believed the pictures were of real children and they were not altered pictures.

Considering the totality of this evidence, we find that the government had sufficient information to establish probable cause to obtain authorization to seize the computer and any DVD disks found in his barracks room. The government could then have conducted a forensic search of these items. As such, to paraphrase our superior court, we find "no reasonable likelihood" that the CID agents would have abandoned their efforts to conduct a forensic search of appellee's computer and related disks if they had not obtained appellee's consent to seize these items. *See Owens*, 51 M.J. at 210. The routine procedures of law enforcement would have led to them seeking and obtaining a search authorization and retrieving the same information they obtained through the consensual seizure and subsequent search. *See id.* at 210–11.

### CONCLUSION

Based upon our review of the record, we hold that the military judge erred in applying the law. Accordingly, the military judge's rulings as to the seizure of the computer and DVD disks and the admissibility of appellee's statements are vacated. The appellee's court-martial may proceed to trial in accordance with Rule for Courts–Martial 908(c)(3).

Senior Judge SCHENCK and Judge CLEVENGER concur.

---

8. In *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F.1995), our superior court stated that we have no factfinding powers in the context of Article 62, UCMJ, appeals. If a military judge's findings of fact are "incomplete," our only recourse is to return the record to the military judge for further factfinding. *Id.* Thus, if the military judge had not incorporated the contents of Prosecution Exhibit 3 for identification into her findings of fact by reference, we would apparently be prevented from considering it, even though there was no dispute as to what the document said or as to whether appellee actually made the statements it contained. In order to consider the contents of the exhibit, we would have to return the record to the military judge for her to delineate the contents for us. We question the necessity of this result. To the extent *Lincoln* requires such an outcome, we urge our superior court to revisit this holding in relation to uncontroverted and readily verifiable facts such as the contents of a prosecution exhibit contained in the record.

**APPENDIX**

| Date: 14 April 04 | **Consent To Search** (USACIDC Supplement 1 to AR 190 22) | Time. 1055 |
|---|---|---|

1 Name of person consenting to the search.

SGT Rittenhouse, Josh

2 Organization and location

ACO 2/1 FWA

3. I have been informed by the undersigned USACIDC Special Agent that an inquiry is being conducted in connection with the following possible violation(s) of law.

Possession, distribution, and/or production of material constituting or containing child pornography

4. I have been requested by the undersigned USACIDC Special Agent to give my consent to a search of my person, premises, or property as indicated below. I have been advised of my right to refuse a search of my person, premises, or property. (If you do not give your consent, do not sign this form.)

5. I hereby authorize the undersigned USACIDC Special Agent and/or other Authorized Law Enforcement Officials assisting the undersigned USACIDC Special Agent to conduct a search of: (Initial and sign applicable blocks)

| | | Initials | Signature |
|---|---|---|---|
| a. | My Person | | |
| b. | My Quarters | Jm | Josh Rittenhouse |

Located At: Rm 307 Bldg 3706 FWA

| | | Initials | Signature |
|---|---|---|---|
| c. | My Vehicle | | |

Located At:

Described As:

| | | Initials | Signature |
|---|---|---|---|
| d. | Other | JR | Josh Rittenhouse |

Located At:

Computers, hard disk drives, removable data storage media, portable data storage devices, cameras, photographs, movies, manuals, notebooks, papers, and computer input and output devices.

Described As: Custom built, desktop

I am authorizing the above search(s) for the following general types of property which may be removed by the authorized law enforcement personnel and retained as evidence under the provisions of Army Regulation 195-5, or other applicable laws or regulations:

Text, graphics, electronic mail messages, and other data including deleted files and folders, containing material related to the sexual exploitation of minors; and/or material depicting apparent or purported minors engaged in sexually explicit conduct; and data and/or information used to facilitate access to, possession, distribution, and/or production of such materials.

6. This written permission is given to the undersigned USACIDC Special Agent freely, voluntarily and without threats or promises of any kind.

Signature of Person Granting Consent

Signature of USACIDC Special Agent

Signature of Witness (If Available)

PROSECUTION EXHIBIT 2 FOR IDENTIFICATION

CID Form 87-R-E
1 Jan 00

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE