UNITED STATES, Appellee,

v.

Gonzalo MORA, Staff Sergeant, U.S. Army, Appellant.

No. 55,540.

CM 447894.

U.S. Court of Military Appeals.

May 16, 1988.

For Appellant: *Captain David C. Hoffman* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Joel D. Miller, Major Jerry W. Peace* (on brief); *Colonel John T. Edwards.*

For Appellee: *Captain Patrick D. O'Hare* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Samuel J. Rob, Captain Richard D. Rubino* (on brief).

## OPINION OF THE COURT

COX, Judge:

This case started out as a simple guilty plea with a pretrial agreement and the military judge sitting as a general court-martial. Pleas were regularly tendered and accepted.[1] During the sentencing portion of the trial, however, things began to unravel. First, trial counsel introduced a document—without defense objection—containing information that should not have been before the court.[2] Fortunately, the military judge detected the items and announced that he would disregard them. Worse, defense counsel himself, apparently through carelessness, introduced documents *decidedly* against his client's best

---

1. Upon his pleas, appellant was convicted of absence without leave, several larcenies, and making and uttering forged checks, in violation of Articles 86, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, and 923, respectively. He was sentenced to a dishonorable discharge, confinement for 5 years, total forfeitures, and reduction to Private E–1. In accordance with the pretrial agreement, the convening authority reduced the confinement to 18 months, but otherwise approved the sentence. The Court of Military Review affirmed the conviction and the sentence as modified. 22 M.J. 719.

2. While no record of prior court-martial conviction had been introduced, the prosecution exhibit in question, a "Personnel Qualification Record," reflected that appellant had been reduced in grade previously from E–4 to E–1. The document further indicated that coinciding with the reduction, he had suffered 218 days of "TIME LOST" by reason of "CONF."

interest.[3] Again it was the military judge who spotted the problem, but by this time he had seen enough. Questioning the effectiveness of counsel's assistance, the judge "declare[d] a mistrial as to sentencing." However, what followed did not look much like a mistrial.

To be sure, the judge uttered the magic words, and everybody seemed to have assumed that a mistrial, indeed, had occurred. But two events intervened that suggest otherwise. First, pursuant to the staff judge advocate's recommendation, the convening authority referred the charges and specifications back to the very same convening order that had been used originally. Second, the same military judge continued to preside on the case.[4] Hence, when the dust settled and the second court-martial convened, things in the courtroom looked very much the same as they had before the mistrial was declared.[5]

At that second court-martial, defense counsel did question the military judge about his ability to preside fairly and impartially, in view of his exposure to the offensive matter during the previous proceedings. Upon receiving the assurances sought, appellant again requested that he be tried by military judge alone. However, the judge declined, explaining:

> Sergeant Mora, I am not going to approve your request for trial by judge alone, and I'll tell you why. Although I feel that I could make a decision based solely on the evidence that's been presented today and the evidence that I would hear today, I fear that the integrity of the system, and your thoughts would always have in the back of your mind, if in fact a severe sentence were imposed, that I was considering the other evidence. Now what constitutes a severe sentence? That differs from individual to individual. But there would always be the thought in the back of your mind that "I did not get a fair shake because the judge could not put that out. It's not humanly possible. It's not professionally possible and that's why he did what he did." I think the integrity of the system and your rights to a fair trial require that I not do that to

3. Immediately after securing a 15-minute "recess to pick up some documents across the street," defense counsel introduced several exhibits. Among these were a series of recent military proficiency ratings which, in relation to his Army peer group, placed appellant near the bottom. Discovery of these contents prompted the judge to inquire whether counsel had even bothered to read the exhibits before introducing them.

Most significantly, another document—ostensibly an Enlisted Evaluation Report—purported to cover a period of time commencing with the beginning of appellant's 7-month absence without leave and extending through his pretrial confinement. As the judge pointed out, it was inconceivable that a *performance evaluation* should even exist for such a period of time. Moreover, though not specifically mentioned by the judge, we note that the spurious document reflects that appellant received maximum ratings in all categories.

Furthermore, the judge noted certain similarities in form between appellant's signatures appearing on documents legitimately before the court and the supposed signatures of others on the apparently bogus document. This prompted the judge to speculate aloud that appellant may have had something to do with the creation of the document. By this time, the judge was well aware, having previously accepted appellant's pleas, that appellant was not a stickler for document integrity. For example, the stipulation presented in conjunction with pleas recited that appellant had supported himself during his unlawful absence by "walk[ing] into the [Yongsan] finance office ... present[ing] himself as a soldier on authorized leave in Korea entitled to casual pay ... [and] present[ing] *personally altered government documents* to support his false claim for the money." (Emphasis added.)

4. It is not entirely clear by whose authority the judge presided at the second hearing. At the initial hearing, it was announced that he had appointed himself to the court-martial. *See* R.C.M. 503(b)(1), Manual for Courts-Martial, United States, 1984. At the later hearing, he was just there, whether as a result of reappointing himself a second time or merely as a continuation of the prior appointment. No objection was made to his presence, however, or that of the court members.

5. Actually, there were a few changes. First, an additional defense counsel was detailed to assist the original defense counsel. Appellant expressed his satisfaction with the dual representation. Second, by a supplemental convening order, three of the original nine officer members were relieved and three others substituted.

you, that you be sentenced by a body that does not know the information that I know, that does not hear that information, but will make its determination based solely on what they will see and by what you and your counsel present before them on that date, and that therefore in the back of your mind you will always know the only decision they'll make will be based on what they saw that date. Do you understand that?

Acknowledging that he understood, appellant opted for trial by officer members.

Next, defense counsel moved for dismissal of the charges and specifications on the grounds that the judge had abused his discretion in granting the mistrial and that further trial amounted to double jeopardy. The assertion was that the evidence that had been presented was not so prejudicial as to require termination of the first proceedings. This motion was denied, and the court-martial—with officer members—proceeded through sentencing. The troublesome documents were not offered or received in evidence.

We specified this issue for review:

WHETHER THE CONVENING AUTHORITY ERRED BY REFERRING THIS CASE TO A COURT–MARTIAL CONVENED BY THE SAME CONVENING ORDER FOLLOWING DECLARATION OF A MISTRIAL AS TO SENTENCE, WHERE THE INITIAL TRIAL WAS BY MILITARY JUDGE ALONE.

R.C.M. 915 of the Manual for Courts-Martial, United States, 1984, sets forth the following basic procedural rules governing mistrial:

(a) *In general.* The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings. A mistrial may be declared as to some or all charges, and as to the entire proceedings or as to only the proceedings after findings.

(b) *Procedure.* On motion for a mistrial or when it otherwise appears that grounds for a mistrial may exist, the military judge shall inquire into the views of the parties on the matter and then decide the matter as an interlocutory question.

(c) *Effect of declaration of mistrial.*

(1) *Withdrawal of charges.* A declaration of a mistrial shall have the effect of withdrawing the affected charges and specifications from the court-martial.

(2) *Further proceedings.* A declaration of a mistrial shall not prevent trial by another court-martial on the affected charges and specifications except when the mistrial was declared after jeopardy attached and before findings, and the declaration was:

(A) An abuse of discretion and without the consent of the defense; or

(B) The direct result of intentional prosecutorial misconduct designed to necessitate a mistrial.

Several preliminary observations can be made immediately. First, mistrials clearly can be declared only as to sentencing; charges and specifications already reduced to findings can readily be carried over without mystical impairment. R.C.M. 915(a). *See also Burtt v. Schick*, 23 M.J. 140, 142 (C.M.A.1986). Indeed, appellant lacks even the claim of surprise or misunderstanding because the military judge kept him fully informed of the significance of the actions throughout the proceedings.

■ Next, appellant's complaint about the judge's failure to consult with counsel before declaring the mistrial (*see* R.C.M. 915(b)) does not state a ground for relief. Such an omission does not, by itself, bar retrial. *See* R.C.M. 915(c)(2)(A). Naturally, a judge is advised to consider the views of the parties while seeking a remedy "less drastic than mistrial." *Burtt v. Schick, supra, quoting United States v. Ghent*, 21 M.J. 546, 550 (A.F.C.M.R.1985). However, sometimes enough is enough. *See* n.3, *supra.*

With regard to "rehearings, new trials, and other trials," R.C.M. 810 supplies the applicable rules:

(b) *Composition.*

(1) *Members.* *No member of the court-martial which previously heard the case* may sit as a member of the court-martial at any rehearing, new trial, or other trial of the same case.

(2) *Military judge. The military judge at a rehearing may be the same military judge who presided over a previous trial* of the same case. The existence or absence of a request for trial by military judge alone at a previous hearing shall have no effect on the composition of a court-martial on rehearing.

(Emphasis added.)

Again, some initial observations are possible. First, the military judge's presence at the rehearing was not itself problematic.[6] R.C.M. 810(b)(2). The presence of the members, however, raises a question. R.C.M. 810(b)(1).

The drafters' analysis to R.C.M. 810(b) states that the rule was "based on Article 63(b) [UCMJ] and the seventh paragraph of paragraph 92a, MCM, 1969 (Rev.)." App. A21–43, 1984 Manual, *supra.* Article 63(b), 10 U.S.C. § 863(b), provided:[7]

Each rehearing shall take place before a court-martial composed of members *not members of the court-martial which first heard the case.*

(Emphasis added.) In 1983, this provision was renumbered as Article 63 with a very minor addition. *See* Pub.L.No. 98–209, § 5(d), 97 Stat. 1398.

Similarly, the seventh paragraph of paragraph 92a, Manual for Courts-Martial, United States, 1969 (Revised edition), provided:

Every rehearing, including a rehearing on the sentence only, shall take place before a court-martial composed of *members who were not members of the court-martial which previously heard the case.*

(Emphasis added.) *See also* R.C.M. 915(c)(2) (trial by *another court-martial* not prevented by declaration of mistrial).

█ In a technical sense, all hearings in this case were conducted before *a* court-martial convened by *a* convening order (even though the composition of the membership was partially modified by supplemental order). *See* R.C.M. 504(a). Therefore, a literal reading of these Code and Manual provisions suggests that the second hearing was a nullity since the members or some of them had in some way been connected with the case both before and after the so-called mistrial. However, this interpretation ignores the reality that none of the members played any role at all in the original hearing because of appellant's request that he be tried by judge alone. Indeed, the members were never even assembled at the first hearing and most certainly had not "heard the case." *See* Art. 63. Thus the question, at best, is one of form versus substance.

We note, further, that the language of Article 63, upon which all of these provisions were based, is virtually identical to that of the original 1950 Uniform Code of Military Justice.[8] It was not until much later that servicemembers even had the option of requesting trial by judge alone. Pub.L.No. 90–632, § 2(3), 82 Stat. 1335 (1968). Clearly, then, the language of Article 63 was not drafted in contemplation of the instant scenario. As further indication of the drafters' orientation, a mechanical application of Article 63 would apparently prohibit judge-alone rehearings, in direct confrontation with Article 16(1)(B) and (2)(C), UCMJ, 10 U.S.C. § 816(1)(B) and

---

6. There is no suggestion that the judge's exposure to the dubious information called into question his ability to be impartial. His decision to not approve the request for trial by judge alone was, therefore, well within his discretion. *Cf. United States v. Sherrod,* 26 M.J. 30 (C.M.A. 1988).

7. The original Article 63(b) contained identical language, except that the initial word was "Every," instead of "Each." Pub.L.No. 81–506, 64 Stat. 108. The present Article 63 retains the word "Each."

8. *See* n.7, *supra.*

(2)(C). R.C.M. 915(c)(2) suffers from the same lack of applicability. Therefore, theoretical nicety aside, these provisions should not be applied to taint a rehearing conducted before previously uninvolved members.

We have implied that what actually happened may have been something other than a mistrial, in effect. Despite the intention and understanding of the players (*i.e.*, the judge, the staff judge advocate, and the convening authority), the practical effect of their combined actions may have amounted to nothing more than this: After being exposed to the objectionable material, the judge reassessed the judge-alone request and disapproved it, forcing trial by members.

It does not matter which label we prefer in characterizing the events. Either way, we see no merit in the specified issue. No rules in law or logic prohibit the actions taken. Nothing that occurred remotely implicated the providence of the guilty pleas. There is no hint in the record that appellant was sentenced by other than a totally impartial panel of members. Further, he has at all times enjoyed the benefits of a truly benevolent pretrial agreement. Most importantly, due principally to the efforts of a vigilant military judge, appellant's right to a fair trial was vindicated. As such, appellant has received what was due.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT concurs.

SULLIVAN, Judge (concurring in part and dissenting in part):

I dissent in part. Although R.C.M. 810(b)(2) seems to allow the judge to sit at a trial by another court-martial, *cf.* R.C.M. 915(c)(2), this regulatory rule must give way to statutory law. Article 16 (1)(B), Uniform Code of Military Justice, 10 U.S.C. § 816(1)(B), gives the accused the right to have an opportunity for a judge-alone trial. Here, the military judge effectively precluded the exercise of that right by assigning himself to the second trial. *See United States v. Sherrod*, 26 M.J. 30 (C.M.A.1988). I would find prejudice only as to the sentencing portion of the trial since proper guilty pleas were entered. I would remand for resentencing only.