UNITED STATES of America

v.

**John A. DOSSEY, Hull Maintenance Technician Third Class (E–4), U.S. Navy.**

NMCCA 200700537.

U.S. Navy–Marine Corps Court of Criminal Appeals.

20 May 2008.

For Appellant: Maj Brian Keller, USMC; LCDR P.D. Bunge, JAGC, USN.

For Appellee: CDR Kelvin Stroble, JAGC, USN.

Before WHITE and VOLLENWEIDER, Senior Judges, and COUCH, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

WHITE, Senior Judge:

This case is before us a second time. This panel previously denied a Government appeal from: (1) a purported *ruling by the military judge excluding evidence*, and (2) the military judge's declaration of a mistrial.[1] The Government moved for reconsideration *en banc* and for extraordinary relief in the nature of a writ of mandamus.[2] The court, *en banc*, denied both reconsideration *en banc* and the request for extraordinary relief. Panel reconsideration, however, was granted.[3]

Having reconsidered the matter, we now hold this court has jurisdiction under Article 62, UCMJ, 10 U.S.C. § 862, to review the *instant mistrial declaration*. Further, we hold that the military judge abused his discretion in declaring a mistrial. We shall vacate the mistrial declaration, reinstate the charge and specification, and return the record to the Judge Advocate General for remand to the court-martial to continue the trial.

## I. The Facts

The accused was charged with offenses arising out of his alleged use of government computers to access child pornography. He moved *in limine* to exclude evidence obtained from a search of the Government computers and network server he allegedly used. On 17 May 2007, the military judge granted the motion in part. AE XII.

During a pretrial session of court on 6 June, at the request of the trial defense counsel, the judge clarified his 17 May ruling.[4] Record at 279–80. Subsequently, during the Government's case-in-chief, the judge determined that evidence in violation of his ruling had come before the members in Prosecution Exhibit 13.[5] At that point, the judge called an Article 39(a), UCMJ, session.

During the Article 39(a) session, the judge stated his belief that his "ruling was reasonably clear" that search terms and efforts at communication were not admissible. *Id.* at 413. After some colloquy with the trial counsel concerning whether the exhibit was covered by the court's prior ruling, the judge declared a mistrial as to the charge and specification affected by the evidence at issue.[6] *Id.* at 420. While the judge permitted discussion on whether his suppression order had been violated, at no time did he solicit comments from counsel concerning the necessity for a mistrial.

Immediately thereafter, the trial counsel asked for a recess, which was granted. *Id.*

1.  In our earlier decision, we held that, because a mistrial withdraws the affected charge and specification from the court-martial and returns them to the convening authority, who may refer them anew, "[w]e do not have jurisdiction to grant the relief requested" and "[t]he Government's remedy is thus not an appeal, but the opportunity to retry *the affected charges at a new court-martial." United States v. Dossey*, No. 200700537, 2007 WL 3120903, 2007 CCA LEXIS 437 (N.M.Ct.Crim.App. 23 Oct. 2007) at 4.

2.  The Government requested a writ of mandamus directing the military judge, prior to any future mistrial declaration in the case, to seek the views of both parties, to clearly state on the record the manifest necessity for declaring a mistrial, and to follow the pertinent rules for courts-martial and precedents. Government Motion for *En Banc* Reconsideration and Motion for Extraordinary Relief, Errata–Corrected, of 28 Nov 2007 at 24.

3.  *United States v. Dossey*, No. 200700537, unpublished order (N.M.Ct.Crim.App. 5 Dec 2007).

4.  The judge stated that the point of his 17 May ruling was "to suppress those things that are traditionally considered communications, that are traditionally afforded some degree of protection as stated in *[United States v.] Long* [64 M.J. 57 (C.A.A.F.2006)]." He said his ruling covered "things that are actually typed that could be considered communications," but evidence the accused sat at a particular terminal or energized a particular search engine were not covered. Record at 279–80.

5.  Prosecution Exhibit 13 is a spreadsheet prepared from information in the index.dat file in the appellee's computer account profile on the ship's server. That file records the history of appellee's Internet usage. The spreadsheet includes, *inter alia*, search terms the appellee entered into Internet search engines.

6.  The original charge and its sole specification.

After the recess, the trial counsel informed the court of the Government's intent to appeal the judge's ruling excluding portions of Prosecution Exhibit 13, as well as his decision to declare a mistrial. *Id.* at 422. The Government also announced it intended to go forward on the remaining charge and specification.[7] *Id.* The judge excused the members, pending call of the court, advising them to expect to be called back at some time in the future.[8]

## II. Principles of Law

Article 62, UCMJ, confers on this court jurisdiction over a Government appeal from an order or ruling by a judge[9] that, *inter alia*, "terminates the proceedings with respect to a charge or specification", or "excludes evidence that is substantial proof of a material fact in the proceeding." Art. 62(a)(1)(A) and (B), UCMJ. The Government must notify the trial judge of the appeal in writing within 72 hours of the order or ruling being appealed. Art. 62(a)(2), UCMJ.

Congress intended Article 62 to be interpreted and applied in the same manner as the federal Criminal Appeals Act, 18 U.S.C. § 3731, except where the particulars of military practice dictate a different approach. *United States v. Brooks*, 42 M.J. 484, 486 (C.A.A.F.1995); *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F.1995); *United States v. True*, 28 M.J. 1, 3 (C.M.A.1989) (citations omitted); S.Rep. No. 53, 98th Cong., 1st Sess. 6, 23 (1983); H.Rep. No. 549, 98th Cong., 1st Sess. 19 (1983), reprinted in 1983 U.S.Code Cong. & Admin.News 2177, 2184–85. While the precise language of the two statutes differs in certain respects, "we can look to the interpretation and application of [the Criminal Appeals Act] for guidance in determining how we will apply Article 62." *Lincoln*, 42 M.J. at 324. In enacting the current version of the Criminal Appeals Act

in 1971,[10] "Congress intended to remove all statutory barriers to Government appeals and permit whatever appeals the Constitution would permit." *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). *See Arizona v. Manypenny*, 451 U.S. 232, 243 n. 18, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *United States v. Scott*, 437 U.S. 82, 85, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Lincoln*, 42 M.J. at 324; Conference Report No. 91–1768, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 5848–49.

■ "The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." RULE FOR COURTS-MARTIAL 915(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.). When it appears grounds for a mistrial may exist, the judge "shall inquire into the views of the parties on the matter and then decide the matter as an interlocutory question." R.C.M. 915(b). "Because consent or lack thereof by the defense to a mistrial may be determinative of a former jeopardy motion at a second trial, the views of the defense must be sought." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), App. 21, at A21–63. The judge's failure to seek the views of the parties, however, does not invalidate the mistrial declaration. *United States v. Mora*, 26 M.J. 122, 124 (C.M.A.1988).

■ A declaration of mistrial has the effect of withdrawing the affected charge and specification from the court-martial. The convening authority may refer them anew, or otherwise dispose of them. R.C.M. 915(c)(1) and Discussion. While withdrawal occurs

---

7. Additional Charge I and its sole specification.

8. On 11 December 2007, the Government notified the court that the members remained available to continue the trial in this case. Statement under penalty of perjury of LT Michael J. Marinello, JAGC, USN, Trial Counsel of 11 Dec 2007.

9. The statute also requires the court-martial be one that may impose a punitive discharge. That requirement is clearly met in this case.

10. In 1971, Congress repealed the prior statute authorizing Government appeal in civilian criminal cases and replaced it with the current version. Omnibus Crime Control Act of 1970, 91 P.L. 642, Title III, § 14 (Jan. 2, 1971), 84 Stat. 1890. Since then, Congress has amended the Act four times, making minor modifications, none of which are relevant to the issue at hand.

upon announcement of the mistrial, a mistrial declaration is not an irreversible "talismanic utterance." It may be reconsidered or reversed until the jury is discharged. *See United States v. Razmilovic,* 498 F.3d 136, 147 (2d Cir.2007); *Camden v. Circuit Court of the Second Judicial Circuit,* 892 F.2d 610, 616 n. 7 (7th Cir.1989); *United States v. Smith,* 621 F.2d 350, 352 n. 2 (9th Cir.1980).

### III. Discussion

The Government appeals from both the military judge's purported 6 June ruling to exclude evidence, and the judge's mistrial declaration. The first issue need not detain us. On 17 May, the judge issued a written ruling suppressing certain Government evidence. The time to appeal that ruling expired on 20 May. Subsequently, on 6 June, the judge called the Government to task for violating his earlier order. Having carefully reviewed the parties' arguments and the record of trial, we are satisfied that (a) the 17 May ruling excluded the evidence at issue in this appeal, and (b) the military judge did not issue a new ruling excluding evidence on 6 June. Rather, he merely noted a violation of his 17 May ruling, and fashioned a remedy—the mistrial—for that violation. Consequently, there is no appealable evidentiary ruling on 6 June.[11]

### A. Jurisdiction to Review a Declaration of Mistrial

■ Article 62 gives this court jurisdiction over an order or ruling that "terminates the proceedings." The first question that must

be answered, therefore, is whether a mistrial "terminates the proceedings." The court is aware of no prior decision by the courts of criminal appeals or our superior court that resolves whether a mistrial "terminates the proceedings," and is, therefore, an appealable order.[12]

On its face, it is unclear whether the phrase "terminates the proceedings" means to terminate the proceedings *before the particular court-martial* to which the charge has been referred, or all proceedings *on the charge.* Obviously, because a mistrial does not terminate all proceedings on a charge (since retrial may be attempted), if that phrase means the latter, we do not have jurisdiction. To resolve this ambiguity, it is appropriate to consider the legislative histories of Article 62 and the Criminal Appeals Act, 18 U.S.C. § 3731, the case law interpreting both statutes, and the context in which the Uniform Code uses the word "proceedings" in its other articles.

A review of the Code reveals that, almost without exception, the Code uses "proceedings" to refer to happenings before a particular court-martial. For example, Article 28 refers to a reporter who records *"the proceedings* of and testimony taken before" a court-martial, and Article 54 requires courts-martial to "keep a separate record of *the proceedings* of the trial of each case brought before it." Article 48 empowers a court-martial to punish for contempt anyone who "disturbs its *proceedings,*" and Article 51 directs the presiding officer of a court-mar-

---

11. We might agree with the Government that the judge issued an appealable order excluding evidence on 6 June if the judge had applied his 17 May ruling so unreasonably as to constitute a *de facto* change. Such is not the case. While the trial counsel was, no doubt, genuinely surprised by the judge's application of the 17 May ruling to Prosecution Exhibit 13, the judge's application of his 17 May ruling to the developments of 6 June was not a *de facto* change amounting to a new ruling that restarted the appeal clock.

12. We do not agree with the Government that our superior court has "clearly" held mistrial declarations are appealable under Article 62, nor that the federal circuit courts of appeal have similarly interpreted the Criminal Appeals Act. *Brooks,* 42 M.J. at 484, cited by the Government, concerned whether entry of a not guilty finding

by the military judge, following a guilty verdict by members, was tantamount to dismissal, and therefore appealable. It did not address whether mistrials may be appealed under Article 62. Insofar as *Brooks* concerns mistrials, it merely establishes appellate courts may vacate such a declaration as a *remedy* where the mistrial was a consequence of some other appealable order found to be erroneous. Likewise, neither *United States v. Keene,* 287 F.3d 229 (1st Cir.2002) nor *United States v. Harshaw,* 705 F.2d 317 (8th Cir.1983), both cited by the Government, involve appeal from a mistrial. *Keene* concerns appeal from the denial of a motion to dismiss. *Harshaw,* despite language suggesting it concerns appeal from a mistrial, actually involves review of an evidentiary ruling by the trial court.

tial to rule on interlocutory questions "arising during the *proceedings.*"

The Code's only uses of the word "proceedings" in a sense broader than a particular court-martial are in Articles 98 and 138. The usage in Article 138 concerns administrative complaints of wrong, and is not helpful to our inquiry. Article 98 makes it a crime to intentionally fail to enforce or comply with any provision of the Code regulating the "proceedings *before, during or after* trial of an accused." Art. 98, UCMJ, 10 U.S.C. § 898 (emphasis added). Significantly, Article 98 explicitly refers to proceedings before and after trial, rather than simply referring to the "proceedings of a court-martial." This specificity suggests that the other, unmodified uses of the term "proceedings" in the Code are understood to mean the happenings before a particular court-martial.

This reading is consistent with both the legislative history of, and the case law concerning, Article 62. As noted in Section II above, Congress intended Article 62 to be interpreted and applied in the same manner as the federal Criminal Appeals Act, by which "Congress intended to remove all statutory barriers to Government appeals and permit whatever appeals the Constitution would permit." *Wilson*, 420 U.S. at 337, 95 S.Ct. 1013. Reading the phrase "terminates the proceedings" in Article 62 to mean the proceedings before the court-martial to which a charge has been referred renders a broader range of orders appealable than the alternate reading, and effectuates the Congressional intent that the Government should enjoy a broad right to appeal.

In light of the foregoing, we conclude that the phrase "terminates the proceedings" in Article 62 means to terminate the proceedings *before the particular court-martial* to which a charge has been referred. Given this reading of Article 62, it is clear that a mistrial declaration terminates the proceedings, and, therefore, that this court has jurisdiction over a Government appeal from such an order.[13]

## B. The Mistrial

### 1. Standard of Review

■■■ An appellate court will not reverse a military judge's decision to declare a mistrial unless the military judge has abused his discretion under the particular facts and circumstances of the case before him. *United States v. Rosser*, 6 M.J. 267, 270 (C.M.A. 1979).[14] Nevertheless, in deciding to declare a mistrial, a military judge "must engage in a sufficient inquiry as a matter of law to uncov-

13. The author previously opined, in his concurrence to the original decision, that a mistrial did not "terminate the proceedings," and therefore this court lacked jurisdiction. The author arrived at that conclusion based on the facts that (a) Congress intended Article 62 to be applied in the same manner as the Criminal Appeals Act, (b) the Criminal Appeals Act specifically mentions dismissals, but makes no reference to mistrials, and (c) Article 62's legislative history contains no indication Congress intended it to apply to mistrials. Upon reconsideration, the author is persuaded his earlier concurrence placed too much weight on the lack of mention of mistrial in the legislative history. The better reading of the legislative history is that Congress gave no thought at all to mistrials when enacting Article 62, and had no discernable intent on that matter. Further, Article 62's legislative history is clear about really only one proposition, viz. Article 62 was meant to give military prosecutors the same broad right to appeal enjoyed by civilian federal prosecutors. On further reflection, the author has concluded the absence of mistrial from the list of appealable orders in the Criminal Appeals Act is likely due to a difference between civilian and military practice. In a federal district court, the jury is almost invariably discharged immediately after a mistrial is declared, creating a *fait accompli*. Reversal of the mistrial and resumption of the trial is impossible; the only option available to the Government is retrial. Because the original trial cannot resume, there is no need for the Criminal Appeals Act to provide for an interlocutory appeal. By contrast, given the way courts-martial are convened and members detailed to them, it is not necessarily the case that a mistrial creates a *fait accompli*. In this case, for example, the court-martial remains in existence and the members remain subject to recall to complete the trial. This distinction between military and civilian practice explains why it is inadequate simply to conclude that, because the Criminal Appeals Act does not mention mistrials, such declarations must necessarily not be appealable under Article 62, UCMJ.

14. *Rosser* was a direct appeal under Article 66, UCMJ, 10 U.S.C. § 866, in which the court was reviewing the military judge's denial of a defense motion for a mistrial; that case did not address whether there is appellate jurisdiction under Article 62, UCMJ, to review mistrial declarations.

er sufficient facts to decide the issue before him." *Id.* at 271.

## 2. Substantive Review of the Military Judge's Order

A military judge should declare a mistrial only when such action is "manifestly necessary in the interest of justice." R.C.M. 915(a). In deciding whether manifest necessity exists, the judge must sufficiently inquire into the facts to decide the issue. *Rosser,* 6 M.J. at 271. He shall inquire into the views of the parties. R.C.M. 915(b). Further, he must determine if less drastic alternative remedies might be adequate to address the problem. *United States v. Jorn,* 400 U.S. 470, 487, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *United States v. Diaz,* 59 M.J. 79, 91 (C.A.A.F.2003). In this case, the trial judge took none of these steps. While he engaged in some colloquy with the parties on whether his suppression order had been violated, he did not discuss whether a mistrial was necessary to ensure a fair trial. Nor did the judge develop the facts that might support such a conclusion.

In this case, the trial judge could have noted for the record exactly what improper evidence had come before the members, and how it was prejudicial. He could have noted for the record what reaction, if any, the members had to the improper evidence. He could have conducted voir dire of the members to determine if they had noticed the improper evidence and if it had any prejudicial effect on them. The judge did not inquire into the views of the parties about whether a mistrial was necessary. Finally, the record is devoid of any indication the judge considered less drastic alternatives, such as a curative instruction or exclusion of the offending exhibit.

Further, the necessity for a mistrial is not manifest on the record. From the record, it is not even clear the members were exposed to any prejudicial information in Prosecution Exhibit 13. At the time the judge declared a mistrial, an electronic version of Prosecution Exhibit 13, a spreadsheet, had been displayed on the members' computer monitors, while the Government's expert witness explained the types of information in each column. The record suggests the entire spreadsheet was not visible on the monitors, as at one point the expert asked the trial counsel to scroll over to another part of the spreadsheet, because the portion of the spreadsheet to which he wished to refer was not visible. Record at 411. How much and what part of the exhibit was visible on the members' monitors cannot be determined from the record.

The Internet search terms contained on the first 26 lines of the spreadsheet do not appear to be unfairly prejudicial.[15] It is not until line 27 of the spreadsheet that the search term "preteen," arguably prejudicial in the context of a child pornography prosecution, first appears. Nothing in the testimony of the expert witness, however, had called attention to that line of the spreadsheet, or any of the others with arguably prejudicial search terms, before the judge called the Article 39(a) session.

Consequently, because the trial judge demonstrated no effort to exercise sound discretion in deciding whether there was manifest necessity for a mistrial, and the necessity for a mistrial is not manifest from the record, the judge abused his discretion.

## IV. Decision/Order

Accordingly, we vacate the military judge's order declaring a mistrial, and reinstate the original charge and specification. The record of trial is returned to the Judge Advocate General of the Navy to return to the court-martial for further proceedings consistent with this decision.[16]

Judge COUCH concurs.

---

15. The search terms reported in the first ten lines are all "amateur facial." Lines 11 and 12 report the use of the search terms "facial whore." Lines 13 and 14 report the use of the search terms "cumoncarmen.com amateur facial." Lines 15 through 26 report the use of the search terms "amateur facial."

16. Because the members were not discharged, but rather excused pending call of the court to resume trial, it remains possible to continue the trial, without offending double jeopardy. *See Brooks,* 42 M.J. at 487. Because it is unnecessary to do so, we make no decision about whether double jeopardy would bar retrial in this case,

VOLLENWEIDER, Senior Judge (dissenting).

I respectfully dissent from the majority's opinion to the extent that it finds that we have jurisdiction to review the military judge's mistrial declaration, and that the military judge abused his discretion in declaring a mistrial. As we do not have jurisdiction to hear this appeal, I would not reach the question of whether the military judge properly excluded evidence. If we did have jurisdiction, I would agree with the majority's opinion that the evidentiary issue was not properly preserved. I would affirm our original opinion.

## I. FACTS

The accused in this case was charged with a variety offenses arising out of his alleged use of Government computers to search for and view child pornography. The accused moved *in limine* to exclude information resulting from a search of the computers he allegedly used and the server for those computers. The military judge granted the motion in part. During trial, the military judge on 6 June 2006 clarified his ruling. Later in the trial, the military judge determined that evidence in violation of his ruling had come before the members in the form of a prosecution exhibit.

This evidence was Prosecution Exhibit 13, a spreadsheet prepared from information within the accused's computer account profile on the ship's server. The spreadsheet included search terms allegedly typed by the accused. Typical search terms in Prosecution Exhibit 13 include "amateur facial," "preteen," "too young cum," "real young upskirt," and "young girl wet swimsuit." The expert on the stand explaining the exhibit told the members that these terms, listed under the heading "Search Engine Criteria," represented the actual terms the user typed in or were in a link the user selected. Record at 409. The expert asked the trial counsel to scroll to the search crite-

ria (the members and the witness were viewing the exhibit via monitor). *Id.* at 411.

At that point the military judge excused the members and held an Article 39(a) session to discuss the matter with counsel. *Id.* at 412. Trial counsel, in continuing to argue the Government's position, stated:

> Well, if Your Honor feels that any person's navigation through the worldwide web is communicating information, then I guess that would—and the government would have to appeal that ruling, because we don't agree—that that wasn't what the ruling—the ruling was that the Internet history comes in, and all the experts have told us that this is—comes right out of the Internet history file, and this is the user's Internet history. This is his navigation. Mr. Ciaccio said it again—on the worldwide web, this is the type of files that were—on the worldwide web, this is the type of files that were—when we merge the two sessions—11th and today—this is the type of file that the accused didn't even know was being created; he didn't know it was being captured. It's done automatically in accordance with the operating system, and it's exactly what you indicated within *Larson* in your ruling here in *Larson*—this is the information that the court admitted in *Larson.* This is the Internet history ——

*Id.* at 419. The trial counsel's argument was followed by defense counsel's argument on the merits of the exclusion order. *Id.* at 419–20.

After these arguments by counsel, the military judge declared a mistrial as to the charges affected by the admission of the evidence being discussed. *Id.* at 420. Immediately thereafter, the trial counsel asked for a recess, which was granted. *Id.* After the recess, trial counsel stated that the Government "has already moved for an appeal under 908 per your ruling prior to the granting of the mistrial. Further the government

---

as argued by the Government. Upon remand, the military judge is of course free to revisit the issue of the necessity for a mistrial, paying due attention to the appropriate factors. If the judge concludes, after due consideration and in the

exercise of sound discretion, that a mistrial is necessary to ensure a fair trial, nothing in this decision prevents him from again declaring a mistrial.

also moves for an appeal of the mistrial." *Id.* at 422. This Government appeal resulted.

## II. DISCUSSION

### A. Article 62 Jurisdiction to Review Mistrial Declaration

An appellate court may rule only on matters within its jurisdiction. " 'Courts created by statute can have no jurisdiction but such as the statute confers.' " *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)(quoting *Sheldon v. Sill*, 49 U.S. 441, 449, 8 How. 441, 12 L.Ed. 1147 (1850)). The question in this case is whether Article 62, UCMJ, confers jurisdiction upon this court the power to review a mistrial declaration under the circumstances of this case. I would hold that it does not.

Article 62, UCMJ, states in pertinent part: (a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):

(A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.

. . . .

(2) An appeal of an order or ruling may not be taken unless the trial counsel provides the military judge with written notice of appeal from the order or ruling within 72 hours of the order or ruling. Such notice shall include a certification by the trial counsel that the appeal is not taken for the purpose of delay and (if the order or ruling appealed is one which excludes evidence) that the evidence excluded is substantial proof of a fact material in the proceeding.

. . . .

(b) An appeal under this section shall be forwarded by a means prescribed under regulations of the President directly to the Court of Criminal Appeals and shall, whenever practicable, have priority over all other proceedings before that court. In ruling on an appeal under this section, the Court of Criminal Appeals may act only with respect to matters of law, notwithstanding section 866(c) of this title [10 U.S.C. § 866(c)] (article 66(c)).

This article is further elaborated on by the Rules for Courts-Martial.

What Congress meant by "terminates the proceedings" is not defined by Article 62. To get an inkling of what it might mean in the context of a mistrial, it is useful to review that presidentially prescribed procedure.

The military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings. RULE FOR COURTS-MARTIAL 915(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.). For example, a mistrial may be appropriate when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members. R.C.M. 915(a), Discussion.[1]

When it appears that grounds for a mistrial may exist, the military judge shall inquire into the views of the parties on the matter and then decide the matter as an interlocutory question. R.C.M. 915(b). The Manual for Courts-Martial Analysis of this subsection states: "Because consent or lack thereof by the defense to a mistrial may be determinative of a former jeopardy motion at a second trial, the views of the defense must be sought." MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.), App. 21 at A21-63. In this case, the military judge did not seek the positions of the parties on a mistrial and thus did not obtain the consent of the defense. This failure does not invalidate the declaration. 1 FRANCIS A. GILLIGAN & FREDRIC I. LEDERER, COURT-MARTIAL PROCEDURE § 7-22.00 (2d ed.1999).

---

1. In this case, the military judge obviously believed that the presentation, in violation of his evidentiary ruling, of search terms used by the accused to plumb the Internet for child pornography was very prejudicial.

A declaration of a mistrial shall have the effect of withdrawing the affected charges and specifications from the court-martial, and the affected charges are returned to the convening authority, who may refer them anew or otherwise dispose of them. R.C.M. 915(c)(1) and Discussion. This occurs instantaneously upon announcement of the military judge's declaration as a matter of law, and no further action by the military judge or the parties is required to return the affected charges to the convening authority. If a mistrial is declared after jeopardy has attached and before findings, a retrial may be ordered as long as the declaration was not an abuse of discretion of the military judge and without defense consent, or the result of intentional prosecutorial misconduct designed to necessitate a mistrial. R.C.M. 915(c)(2); *see United States v. Waldron,* 36 C.M.R. 126, 1966 WL 4430 (C.M.A.1966). Thus, while a mistrial "terminates" the trial, it does not by itself "terminate" the final prosecution. In other words, it does not have the effect of dismissing the charges.

In the case *sub judice,* the trial counsel did not ask for a stay or delay after the military judge's evidentiary ruling but before the declaration of mistrial. Trial counsel's equivocal statements about possibly appealing the evidentiary ruling, made before the mistrial declaration, did not amount to either a notice of appeal or request for a stay until an appeal decision could be made. Therefore, when the trial counsel asked for time to consider an appeal and subsequently announced the Government would appeal, the affected charges had, by operation of law, been returned to the convening authority. The Government's remedy is thus not an appeal, but the opportunity to retry the affected charges at a new court-martial. This is actually a more efficient mechanism than allowing an appeal. An appeal can take many months, particularly where the decision of the Court of Criminal Appeals is then appealed to the Court of Appeals for the Armed Forces. The convening authority, on the other hand, can immediately refer the charges to a new court-martial.

The majority notes that "Congress intended Article 62 to be interpreted and applied in the same manner as the federal Criminal Appeals Act, 18 U.S.C. § 3731, except where the particulars of military practice dictate a different approach." I have a few problems with the majority's analysis. First, if Congress had such an intention, one would have thought that it would have used similar language in drafting Article 62, which was enacted after Section 3731. The majority does not note the differences. The relevant text of Article 62 is set forth above. Section 3731 reads, in pertinent part, as follows:

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
>
> . . . .
>
> The provisions of this section shall be liberally construed to effectuate its purposes.

The federal statute thus grants appeals where charges are dismissed. In the military system, declaration of a mistrial does not effect a dismissal of charges. The charges are merely returned to the convening authority, who may re-refer them to a court-martial. Thus, the exception noted by the majority becomes the rule where a mistrial is declared in a court-martial.

I find little to aid in the analysis of the appealability of a declaration of a mistrial of a court-martial in the three military cases cited by the majority as dispositive of the issue. None of the cases involved a mistrial. In *United States v. Brooks,* 42 M.J. 484 (C.A.A.F.1995), the court found that the action of the military judge was tantamount to a dismissal with prejudice, and therefore appealable. *Id.* at 486–87. The decision in *United States v. Lincoln,* 42 M.J. 315 (C.A.A.F.1995) involved an appeal from a trial ruling suppressing a confession. This invoked a different section of Article 62 from that at issue in this case. In *United States v. True,* 28 M.J. 1 (C.M.A.1989), a split decision, the court was ruling on an abatement order, and found the trial judge's order appealable

only after first finding the order was tantamount to a dismissal of charges.

I find no fault with the statement by the majority that a trial judge may reconsider a declaration of mistrial until he discharges the jury, as noted in the federal cases cited. However, I am not sure of its application in the military system where charges are immediately returned to the convening authority. Even if the military judge could reconsider his mistrial declaration prior to adjourning the court-martial (a proposition that would not offend me), that such a power is held by the military judge at trial would simply be irrelevant to the question of whether this court had jurisdiction to hear an appeal from a mistrial declaration.

The majority discusses the way the word "proceedings" is used in other sections of the Uniform Code of Military Justice. I do not see the relevance of doing so—it does not, to me, offer any light on the issue of whether a mistrial terminates a "proceeding" as it is used in Article 62. I find the majority's approach inconsistent with its finding that Article 62 is to be considered the functional military equivalent of the Criminal Appeals Act. That act requires dismissal of charges as a precursor to jurisdiction. A mistrial in a court-martial does not dismiss charges. I remain convinced that the declaration of mistrial in the instant case is not within our jurisdiction under Article 62.[2]

## B. ABUSE OF DISCRETION

Even if we had jurisdiction, I would find no substantive merit to the Government's appeal. While a mistrial is a drastic remedy, and a mistrial should be granted only to prevent manifest injustice to an accused, a military judge has " 'considerable latitude in determining when to grant a mistrial.' " *United States v. Diaz,* 59 M.J. 79, 90 (C.A.A.F.2003)(quoting *United States v. Se-*

ward, 49 M.J. 369, 371 (C.A.A.F.1998))(review of denial of defense motion for mistrial). The military judge's decision to declare a mistrial will not be reversed absent clear evidence of abuse of discretion. *Id.* The *Diaz* court noted:

> Our deference to the military judge's decision on a mistrial is consistent with other federal practice addressing this matter as reflected in this statement by the First Circuit:
>
> > The trial court has a superior point of vantage, and ... it is only rarely—and in extremely compelling circumstances—that an appellate panel, informed by a cold record, will venture to reverse a trial judge's on-the-spot decision....
>
> . . . .
>
> *United States v. Freeman,* 208 F.3d 332, 339 (1st Cir.2000) (citations and internal quotes omitted).

*Id.* at 90–91.[3]

In a recent unpublished decision, Senior Judge Rolph wrote:

> A military judge is accorded "considerable latitude in determining when to grant a mistrial," *United States v. Diaz,* 59 M.J. 79, 90 (C.A.A.F.2003)(quoting *United States v. Seward,* 49 M.J. 369, 371 (C.A.A.F.1998)), and it is only in rare and extremely compelling circumstances that an appellate panel should reverse a trial judge's decision with respect to this issue, [*United States v. Dancy,* 38 M.J. 1, 6 (C.M.A.1993)]. This deference to the trial judge is appropriate, as it is that individual who possesses the superior vantage point from which to assess the tenor of the ongoing proceedings, and impact the error(s) had upon such proceedings, and the members' amenability to following curative instructions. *Diaz,* 59 M.J. at 90 (quoting

2. The majority gives weight to the fact that in December of last year, the members of this court-martial remained available to continue the trial. I would suggest that whatever Congress intended in Article 62, it did not intend our jurisdiction to hinge on such a fortuitous circumstance. In any event, we have no assurance that the members will remain available until this decision is promulgated, or until final review by our superior court is completed.

3. The *Diaz* court ultimately found that the military judge abused his discretion by not granting a mistrial where the prosecution's witness had put before the members opinions prohibited by the military judge's prior ruling. The Court of Appeals for the Armed Forces came to this decision despite the extensive questioning of the members and instructions to them to disregard the offending evidence. 59 M.J. at 91–93.

*United States v. Freeman,* 208 F.3d 332, 339 (1st Cir.2000)). We review the military judge's decision to proceed with a curative instruction vice declaring a mistrial for a clear abuse of discretion. *Dancy,* 38 M.J. at 6.

*United States v. Zell,* No. 200600738, 2007 WL 3307007 at 4–5, 2007 CCA LEXIS 442 at 13–14, (N.M.Ct.Crim.App. 8 Nov. 2007). The court in *Zell* set the standard of review on appeal where the military judge did not grant a mistrial. I believe the standard of review on appeal should be the same when an appellate court reviews the military judge's grant of a mistrial. Applying this standard to the instant case, I find no "rare and compelling circumstances" that would compel reversal in this case. I find no clear abuse of discretion by the military judge in this case.

The majority here finds the judge clearly abused his discretion because he did not "record exactly what improper evidence had come before the members, and how it was prejudicial." The record itself clearly shows the evidence that was before the members— Prosecution Exhibit 13, full of words that were both clearly in violation of the court's earlier ruling and extraordinarily inflammatory and prejudicial, as noted in the facts listed above. The prejudice is quite obvious, and was recorded by the court reporter, then set forth in the record of trial that is now before us.

The majority finds the judge clearly abused his discretion because he did not note for the record the "reaction, if any, the members had to the improper evidence." However, the majority cites no authority that would require him to do so; nor does it cite authority for the proposition that not recording the "reaction, if any" is reversible error. In fact, the majority does not offer any prior opinion that found such even desirable if not absolutely necessary. The Government, which was represented in the courtroom, does not allege the members had any pertinent reaction. Similarly, it is unclear how the military judge could have avoided a mistrial by conducting voir dire of the members, as suggested by the majority. Indeed, an experienced trial judge could well have concluded that such a course would have merely burned the inflammatory matter into the minds of the members.

The majority faults the military judge for not offering a curative instruction or excluding the offending exhibit. I can see where the former would succeed only in further highlighting for the members the prejudicial evidence. The latter would essentially end the Government's case in any event. Notably, the military judge tried to exclude the offending exhibit, to the extent that he had ruled earlier that that sort of evidence could not be presented, but the trial counsel brought it before the members anyway. And that is the crux of this entire issue—the Government caused this problem, and it did so by bypassing the court's evidentiary ruling and putting the highly inflammatory Exhibit 13 on the member's monitors.

Inexplicably, the majority finds a clear abuse of the discretion because the military judge did not "inquire into the views of the parties about whether a mistrial was necessary." However, the majority also notes that failure to seek the views of the parties does not invalidate the mistrial declaration, citing *United States v. Mora,* 26 M.J. 122, 124 (C.M.A.1988). This latter observation is particularly pertinent when viewed with the reason for such an inquiry: "Because consent or lack thereof by the defense to a mistrial may be determinative of a former jeopardy motion at a second trial, the views of the defense must be sought." MCM, App. 21, at A21–63. In this case, neither party has asserted that former jeopardy would bar a new trial. The defense impliedly consented to the declaration of mistrial, as counsel did not object at the time, did not object after either of the two subsequent recesses, and has not objected in any pleadings before this court on the Government's appeal. The trial counsel did not object to the mistrial when it was announced, and did not object to it fifteen minutes later after a recess. After yet another recess, the trial counsel merely announced an intention to appeal the evidentiary ruling and the mistrial declaration. Neither party at any time asked the court to allow their views on the subject to be discussed, despite three opportunities. Neither party offered their views on the subject.

While the trial counsel finally stated that the Government intended to appeal the mistrial declaration, the trial counsel did not state on what grounds the appeal was to be based. Neither party raised the issue of double jeopardy. Neither party asked the military judge to reconsider his ruling, or even suggested he should follow more closely the procedures set forth in R.C.M. 915. I suggest both parties waived this procedural issue by failing to object on that ground below. In any event, regardless of waiver, I cannot find a clear abuse of discretion where failure to seek the views of the parties does not affect the mistrial declaration, and the views of the parties, had they been known, would not have affected retrial.

The principle basis for the majority's decision appears to be its finding that the members may not have been exposed to the prejudicial evidence set forth in Prosecution Exhibit 13. This is the least persuasive, and most perplexing, point made by the majority opinion. It is based wholly on speculation. The record shows the expert on the stand asked the trial counsel to scroll down to the most offending language. Only thereafter did the military judge excuse the members and hold an Article 39(a) session. The military judge, trial counsel, and the defense counsel were in the best position to know what the members saw. Trial counsel did not argue at trial that the members did not see anything that violated the military judge's evidentiary ruling. Neither the Government's original brief on appeal nor its motion for reconsideration implied or argued that the members were not presented, or did not see, the offending matter. Nonetheless, in order to invalidate the ruling of the military judge, who was actually in the courtroom, the majority has given birth to an issue which is not supported by the record, and which was neither raised nor argued by the parties. I cannot concur in the majority's findings or analysis in this regard.

For the foregoing reasons, even if we had jurisdiction to consider the matter, I do not believe the record supports a finding by this court that the military judge clearly abused his discretion by declaring a mistrial after the trial counsel introduced to the members highly inflammatory evidence in violation of that court's prior evidentiary orders. I would affirm the military judge's decision, and return this case to the convening authority for appropriate action.